**Electronically Filed
Supreme Court
SCWC-16-0000345
30-JUN-2020
10:26 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

_____

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

MAXWELL F. JONES,
Petitioner/Defendant-Appellant.

_____

SCWC-16-0000345

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000345; CASE NO. 1DTA-15-03477)

JUNE 30, 2020

McKENNA, POLLACK, AND WILSON, JJ., WITH RECKTENWALD, C.J.,
CONCURRING IN PART AND DISSENTING IN PART,
WITH WHOM NAKAYAMA, J., JOINS

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

This appeal arises from Maxwell Jones's ("Jones")

conviction by the District Court of the First Circuit ("district

court")[1] for the offense of operating a vehicle under the influence of an intoxicant ("OVUII") in violation of Hawai'i Revised Statutes ("HRS") § 291E-61(a)(1) (Supp. 2014).[2] Jones's certiorari application raises four questions:

> 1.    Did the ICA gravely err as a matter of law in finding that "it was not error for the [d]istrict [c]ourt to allow Officer Wong to express an expert opinion that Jones 'failed' the HGN [horizontal gaze nystagmus] test, the walk-and-turn test, and the one-leg stand test[]"?

> 2.    Did the ICA gravely err as a matter of law in finding that "even if the [d]istrict [c]ourt erroneously allowed Officer Wong to opine that Jones failed the HGN test and other SFSTs, the error was harmless because there was other substantial evidence supporting Jones's OVUII conviction[]"?

> 3.    Did the ICA gravely err as a matter of law in finding that "Officer Wong was properly allowed to express an expert opinion that Jones was intoxicated"?

> 4.    Did the ICA gravely err as a matter of law in determining that "Officer Wong's observations of Jones's operation of his car, the strong odor of alcohol coming from Jones's breath, Jones's red and bloodshot eyes, Jones's fumbling with his driver's license, and Jones's dropping his license in his lap, was sufficient to support Jones'[s] conviction[]"?

---

[1]    The Honorable James S. Kawashima presided.

[2]    The August 7, 2015 written complaint, which also included an alleged violation of HRS § 291E-61(a)(4) regarding blood alcohol content, was orally amended before trial commenced on January 8, 2016, to charge Jones solely with violating HRS § 291E-61(a)(1), which provides:

> **§291E-61  Operating a vehicle under the influence of an intoxicant.**  (a)  A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

>> (1)  While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

We answer the first two questions "yes."  The third question has three components.  On certiorari, Jones reasserts questions he raised to the Intermediate Court of Appeals ("ICA") regarding (a) whether Officer Joshua Wong's ("Officer Wong") expert opinion testimony regarding Jones's performance on the standardized field sobriety tests ("SFSTs" or "FSTs") was admissible as substantive evidence of intoxication and not just as to probable cause for arrest; (b) whether Officer Wong's expertise permitted him to draw a correlation between the test results and sobriety to render an expert opinion that Jones was intoxicated; and (c) whether Officer Wong's expertise permitted him to testify that Jones had a blood alcohol level of 0.08 or above.  We answer question 3(a) "yes."

Based on State v. Toyomura, 80 Hawai'i 8, 26, 904 P.2d 893, 911 (1995) (setting out evidentiary foundation required for admission of a police officer's expert opinion testimony about whether a defendant was intoxicated based on performance on SFSTs), we answer question 3(b) "yes."

Based on State v. Vliet, 91 Hawai'i 288, 296-97, 983 P.2d 189, 197-98 (1999) (ruling in OVUII case that any error in the officer's legal conclusion testimony that defendant's state of sobriety "would have been over the legal limit" was harmless beyond a reasonable doubt), we answer question 3(c) "no."

3

Based on the reasons discussed herein, however, we also prospectively hold that for trials occurring after the date of this opinion, police officers may no longer testify, whether in a lay or expert capacity, that a driver appeared "intoxicated."

Finally, because there was substantial evidence supporting Jones's OVUII conviction, we answer the fourth question "no."

Accordingly, we vacate the ICA's July 15, 2019 judgment on appeal and the district court's March 22, 2016 judgment of conviction, and we remand this matter to the district court for further proceedings consistent with this opinion.

## II.  Background

### A.  District court proceedings

Jones was arrested on July 25, 2015, on suspicion of OVUII. He was charged by complaint on August 7, 2015.[3]  Jones pleaded not guilty, and the case proceeded to a bench trial, which began on January 8, 2016, and ended on March 22, 2016.

### 1.  Officer Wong's testimony

The State presented only one witness: Officer Wong of the Honolulu Police Department ("HPD"), the arresting officer. Jones did not testify nor did he present any other witnesses.

Officer Wong testified that he attended the police academy as a police recruit in 2010.  As of his January 8, 2016 testimony, Officer Wong had been an HPD officer for five years.

---

[3]    See supra note 2.

4

On July 25, 2015, at around 3:15 a.m., Officer Wong was waiting at a red light on Keʻeaumoku Street heading inland at the intersection of Makaloa Street. After his light turned green, Officer Wong heard a loud sound, as from a roaring engine, to his left and saw headlights heading eastbound on Makaloa Street; the car, a four-door Toyota sedan, went through the intersection, running the red light. Officer Wong followed and pulled over the car.

When he approached the driver's side window, Officer Wong could "smell the strong odor of alcohol from [the driver's] breath." Officer Wong informed the driver, whom he identified as Jones, why he had been pulled over, to which Jones responded, "[O]h, I didn't make the light?" Jones spoke with "[s]trong slurred speech." When Officer Wong viewed Jones and the interior of the cabin with his flashlight, he also noticed that Jones had red, bloodshot eyes. When Officer Wong asked Jones for his license, car registration, and insurance, Jones fumbled with his wallet and driver's license, and the license fell in his lap.

Officer Wong then asked Jones if he would participate in SFSTs. Jones stated he had not been drinking as he was the designated driver for his friends, and that they had just come from a nightclub, but that he would participate in the SFSTs.

As of July 25, 2015, Officer Wong had administered SFSTs approximately 800 times. He first received training in SFST administration in May 2011.[4] Officer Wong's initial training had consisted of more than twenty-four hours of training on three days and two nights of SFST testing on live subjects, some of whom had been drinking and some of whom had not. As part of his training, which included both classroom and practical components, he was taught how to evaluate a subject's performance on the SFSTs. Officer Wong had passed written and practical examinations on administering SFSTs; the practical exam included going over studies that described the findings and success rate of each SFST. As a result of his training, he had been qualified to administer and evaluate the SFSTs.

In 2012, Officer Wong attended the "ARIDE" program, which he described as a refresher course on SFSTs and an introductory course in the drug recognition expert program.[5] Upon completion of the ARIDE program in 2012, he was recognized as a drug

---

[4]    According to Officer Wong, the SFST training was mandatory training given to all police recruits at the police academy. His later testimony suggested that this training may have occurred in 2010.

[5]    California Highway Patrol describes the "ARIDE" program as an Advanced Roadside Impaired Driving Enforcement course developed by the National Highway Traffic Safety Administration and the International Association of Chiefs of Police Technical Advisory Panel and the Virginia Association of Chiefs of Police to "bridge the gap" in training between standard field sobriety testing and drug evaluation and classification programs for states that also have such drug programs. See California Highway Patrol, Advanced Roadside Impaired Driving Enforcement (ARIDE) Course, available at https://www.chp.ca.gov/programs-services/for-law-enforcement/drug-recognition-evaluator-program/schedule-of-classes/aride [https://perma.cc/QRW9-9M3K].

recognition expert, and he also took a refresher course in drug recognition in 2013.

In 2015, Officer Wong became a SFST instructor for the HPD. To become an instructor, he was again trained by senior instructors, gave classes, and passed exams. When asked whether he was required to receive any certifications to become an instructor, Officer Wong responded that the senior instructors were qualified by the National Highway and Traffic Safety Administration ("NHTSA") and the International Association of the Chiefs of Police ("IACP"). The senior instructors then trained the officers who trained him. He described this as the certification process. Jones's nonresponsive objection to this testimony was overruled. Officer Wong's later testimony regarding his instructors' certifications by NHTSA was also received over Jones's lack of foundation and hearsay objections.

According to Officer Wong, the NHTSA manual sets forth standards for the administration of SFSTs, which consist of the horizontal gaze nystagmus[6] test ("HGN"), the walk-and-turn test, and the one-leg stand test. Officer Wong testified that a subject's performance on SFSTs "is indicative of whether or not they can operate a vehicle in a safe and prudent manner."

---

[6]    Nystagmus has been defined as "[a] rapid, involuntary jerking or twitching of the eyes, sometimes caused by ingesting drugs or alcohol." Nystagmus, Black's Law Dictionary (11th ed. 2019).

Officer Wong was asked what correlation, if any, existed between a subject's ability to perform the SFSTs and the subject's ability to operate a motor vehicle.  Jones objected to this question based on a lack of foundation for Officer Wong to testify as an expert on a correlation, the lack of scientific evidence of a correlation, and the lack of evidence that Officer Wong had received training on making such a correlation.  The deputy prosecuting attorney ("DPA") responded that Officer Wong had testified that he had been certified, that he was a trainer on SFSTs, and that he was trained multiple times on the SFSTs.  The following exchange occurred:

> THE COURT:  Okay.  Well, the -- the testimony was rather summary in nature, but as far as I'm concerned, it did [hit] the prime points initially set forth [] in State versus Mitchell[7] not in the order listed and not necessarily broken up in bullet point form.  But I'm satisfied that the officer's testimony does meet with the primary requirements set forth, the foundational requirements.
> 	If the officer has been certified and retrained which is, by the way, something that's often missing from this testimony, and in this case has himself been qualified to become a certified instructor, and has specifically testified that this is all in accordance with NHTSA, I'm satisfied the Mitchell standard has been met in this case.
> [DEFENSE COUNSEL]: Except that there was no testimony yet that he was so certified.  He did say he -- he was initially trained in May of 2011 to do the field sobriety test and then he testified about drug recognition until 2013 he became -- he said he became a field sobriety test instructor.  But nothing about certification.
> THE COURT:  Well, to be allowed to be -- I grant you the exact language hasn't been adduced.  But to become an instructor and then to be allowed to perform these tests

---

7	In State v. Mitchell, 94 Hawaiʻi 388, 15 P.3d 314 (App. 2000), the ICA held that before HGN test results can be admitted into evidence, "it must be shown that (1) the officer administering the test was duly qualified to conduct the test and grade the test results; and (2) the test was performed properly in the instant case."  94 Hawaiʻi at 397, 15 P.3d at 323.

8

> over the past few years, I find, for foundational purposes, it does meet the standard. At least he couldn't have done that if he wasn't certified.
> So I'm granting you that specific testimony has not been adduced. That said, I'm satisfied that, at least via inference if not exact language, the standard has been met. So objection's overruled.

Officer Wong then testified as to the SFSTs performed by Jones. Jones responded in the negative to the medical rule-out questions regarding whether he had any impediments that could affect his performance on the SFSTs. Officer Wong also testified that the sidewalk area of Makaloa Street, where Jones performed the SFSTs, was well-lit and level, that the weather was clear, and that he did not notice any physical injuries to Jones or any other circumstance that would interfere with Jones's ability to perform the SFSTs.

Officer Wong was then asked about the HGN test. Jones immediately objected on the grounds that there is no scientific evidence to establish a foundation that performance on the HGN test is admissible to prove intoxication beyond a reasonable doubt, and that State v. Ito, 90 Hawai'i 225, 978 P.2d 191 (App. 1999)[8] had discussed the HGN test being admissible as to probable cause only and had not reached the issue of whether the HGN test is sufficiently scientifically reliable to prove guilt beyond a

---

[8]   In Ito, the ICA held that HGN test results have been sufficiently established to be reliable, and that as long as a HGN test was properly administered, its results are relevant and admissible as evidence in an OVUII (previously referred to as DUI) case that police officers had probable cause to believe that a defendant was OVUII, but expressly not deciding whether HGN test results are admissible as evidence of a defendant's intoxication because the issue had not been presented. 90 Hawai'i at 240-41, 978 P.2d at 206-07.

reasonable doubt. The district court overruled the objection without prejudice.[9]

Officer Wong then testified on how he had been trained to administer the HGN test in accordance with the NHTSA manual, which was to have a subject place their feet together with heels and toes touching, hands to the sides, and to inform them he would be holding a stimulus, a pen, twelve to fifteen inches from the subject's face, slightly above eye level, and that the subject was to follow the tip of his pen with their eyes without head movement. He testified he was trained to look for the lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and the onset of nystagmus before forty-five degrees, and that if a subject exhibited any of those three things, it would be a "clue" of nystagmus that was considered a "fail."

When asked by the DPA what that meant regarding a subject's sobriety, Jones again objected based a lack of foundation regarding correlation. The DPA again responded that Officer Wong had testified he had been trained and certified according to NHTSA standards to administer SFSTs, including attending a recent refresher course, which should allow him to give an opinion regarding nystagmus and a subject's sobriety. Jones

---

[9] The district court stated, "There's a wealth of material, not just Ito, Ferrer, K[ehdy], all those cases get into whether or not HGN is admissible for the purpose of determining intoxication." See supra note 8 and infra notes 12 and 13.

10

responded that the issue was not whether Officer Wong had properly administered the test, but the lack of foundation regarding Officer Wong's expertise regarding whether the HGN test is correlated to evidence of intoxication beyond a reasonable doubt.   The district court then stated:

> Here's the issue.  Ito,[10][ Mitchell,[11] Ferrer,[12] even K[ehdy],[13] none of them say what would constitute admissibility of HGN results for substantive intoxication. All they say is what wasn't done in those cases.
> I am finding, lacking any guiding authority otherwise, that the standard they say hasn't been met in those cases has been met in this case.  And without anything saying I can't, I will, over objection, admit the testimony for the purpose of determining substantive evidence of intoxication beyond simple probable cause which isn't even relevant at this point.  So objection is overruled.  Your objection is preserved for the record, [defense counsel].

Officer Wong then testified over another overruled objection that if there was no medical problem or medication issue, the existence of nystagmus is indicative that alcohol is

---

10      See supra note 8.

11      See supra note 7.

12      In State v. Ferrer, 95 Hawai'i 409, 23 P.3d 744 (App. 2001), the ICA held that the State had failed to lay a proper Toyomura foundation, for the admission of an officer's expert opinion on whether the defendant had "passed" or "failed" the psychomotor FSTs.  95 Hawai'i at 430, 23 P.3d at 765.  Ferrer also separately held that the foundation laid had been insufficient to establish that the officer was duly qualified to conduct the HGN test and grade the test results.  95 Hawai'i at 424, 23 P.3d at 759.

13      In State v. Kehdy, No. 29146, 2009 WL 1805908 (App. June 25, 2009) (SDO), the ICA ruled that the State failed to provide sufficient foundation to admit an officer's testimony regarding a driver's performance on the HGN test, where the officer stated he was provided with materials from the NHTSA during his training and that his instructors went through the standards and guidelines from the NHTSA, but did not state the training he received met NHTSA standards as required by Ito, and merely stated he received materials from NHTSA regarding standards and guidelines, and that, like in Ito, there was no evidence the officer was supervised by certified instructors during his training.  2009 WL 1805908, at *4.

impairing a subject's ability to perform the SFSTs and to operate a motor vehicle. Officer Wong then testified that on July 25, 2015, he instructed Jones on the HGN test consistent with the standard instructions indicated above, and that Jones stated he understood them. This concluded the testimony for January 8, 2016, and Officer Wong's testimony was continued until March 22, 2016.

Upon resumption of Officer Wong's testimony on March 22, 2016, Jones renewed his objection to the relevance of SFSTs to prove intoxication beyond a reasonable doubt. The district court overruled the objection, indicating that although it believed Jones's previous objections had been sufficient, Jones would be granted a standing objection to the relevance of the SFSTs to prove intoxication beyond a reasonable doubt. The district court also overruled Jones's renewed objection to the admission of the HGN test testimony in its entirety as evidence of intoxication and granted a continuing objection to the admission of the HGN test testimony. The following exchange occurred:

> [DEFENSE COUNSEL]: I would just for the record like to renew my objection to the relevance of the field sobriety test to prove intoxication beyond a reasonable doubt, and ask for a continuing objection in that regard.
> THE COURT: So noted. But I think your -- well, objection's noted but overruled. And I think it's -- it's lodged sufficiently. If you're just talking about the field sobriety test, case law makes it fairly clear what that consists of. So just saying that you object to the field sobriety test I think lays out sufficient parameters to cover what they are.

So running objection is noted.  I don't think it's necessary, but your initial objection is sufficient to make a record.

[DEFENSE COUNSEL]: And I would also like to renew and ask for a continuing objection to the horizontal gaze nystagmus test as evidence of intoxication.  Under State versus Ito,[14] it clearly states that it's admissible for probable cause but does not reach the issue of whether it's admissible for intoxication.

THE COURT: So noted.  And again overruled for the same reasons as before.  Ito,[15] Mitchell,[16] Ferrer[17] and K[ehdy][18] make the requirements fairly stringent.  But I do find or have found and, therefore, will stand on my finding that this is one of the rare cases because of the situation with Officer Wong's having been -- let's see, was this the one?  Oh, yeah, okay, yeah, not just originally certified by recently recertified.

To the extent that K[ehdy] makes that requirement, periodic retraining amongst and including any other requirements, it's satisfied in this case.  So foundation has been laid.  Objection is noted, though, and lodged for the record.

[DEFENSE COUNSEL]: Well, I wasn't -- I wasn't clear that he actually testified that he was recertified for the purposes of HGN.  I think he -- I thought he testified that he was recertified for -- as a -- as a drug recognition expert.

THE COURT: Right, which includes HGN precisely because it is not, as I recall, an indicator of -- of intoxication due to THC.[19]  But that would necessarily mean covering as well for alternative intoxication including without -- including and especially alcohol.  So, I mean, for the reasons stated before, your objection is noted and lodged.  I believe it's safe.  And if it's not, I'm sure that you've made it clear enough for appeal purposes.

[DEFENSE COUNSEL]: Yes.  And so just to confirm, I have a continuing objection, I don't have to raise it every time that it's discussed?

THE COURT: Well, once you've -- yeah, you don't.

Officer Wong then testified that he administered and evaluated the results of each SFST administered to Jones in

---

14    See supra note 8.

15    See supra note 8.

16    See supra note 7.

17    See supra note 12.

18    See supra note 13.

19    No such evidence was received in this case.  It appears the district court may have been relying on its knowledge of the contents of NHTSA manuals.

accordance with his training and the NHSTA manual. With respect to the HGN test, Officer Wong checked for and found no resting nystagmus, he observed that Jones's pupils were of equal size, and he confirmed that Jones could track the stimulus equally - based on these observations, Officer Wong continued on with the test. Officer Wong testified that during Jones's performance of the HGN test, he observed six out of six clues of intoxication, which were lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and onset of nystagmus prior to forty-five degrees, in both eyes.

According to Officer Wong, this meant that Jones had "failed" the HGN test. Officer Jones also testified the "fail" meant Jones had a blood alcohol content of 0.08 or above. The DPA then asked Officer Wong if there were any studies about the HGN test that would point toward that conclusion. Officer Wong began testifying about a San Diego field test study, indicating that it was the most recent study, in which police officers conducted the test in the field and in the laboratory. At this point, Jones objected on hearsay grounds, that Officer Wong was testifying about a study he had not seen. The DPA responded that the testimony was being offered for foundation. The district court sustained the objection on the grounds that "there are certain hoops that still have to be jumped through for even an expert to testify about external treatises, articles,

that sort of thing that have not been met yet as far as I'm concerned."[20]  Thus, Officer Wong did not testify as to studies apparently supporting his testimony that Jones's "failure" on the HGN test mean he had a blood alcohol content of 0.08 or above.

Next, Officer Wong testified regarding his administration of the walk-and-turn test.  Once more, he gave Jones instructions on how to perform the test, including verbal instructions and a demonstration of the correct position.  Jones confirmed he understood the test and had no questions.  Officer Wong looked for two clues during the instructional phase, in which he asked Jones to stay in position and not begin until cued: whether Jones could keep his balance while standing still and whether he started too soon or without being told to start. He then looked for six clues during the walking portion of the test: whether Jones turned around improperly, stopped, failed to

_____

[20]    It appears the district court was referring to Hawai'i Rules of Evidence ("HRE") Rule 803(b)(18) (2002), which provides a hearsay exception for "learned treatises":

> (18) Learned treatises.  To the extent called to the attention of an expert witness upon cross-examination or relied upon by the witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice.  If admitted, the statements may be read into evidence but may not be received as exhibits.

15

step heel-toe, stepped off-line, raised his hands, or took an improper number of steps.

According to Officer Wong, a subject "fails" the test if he exhibits two clues.  Officer Wong testified Jones exhibited seven clues: he was unable to keep his balance during the instructional phase, stopped walking while on the turn, turned improperly, did not step heel-to-toe five times (missing by about a half-inch), stepped off-line three times, raised his arms six to eight inches, and took ten steps instead of nine. Officer Wong also testified that at the end of the first nine steps, Jones stopped and asked him if he should take nine steps or ten; Officer Wong responded that he should "take the test as how he had remembered" from the instructions.  Jones ended up taking ten steps.

Officer Wong then testified that Jones "failed" the walk-and-turn test and that his blood alcohol content was at or above 0.08.

Officer Wong then testified that he instructed Jones and demonstrated how to complete the one-leg stand test, after which Jones affirmed that he understood.  During the test, Officer Wong looked for four clues while Jones stood on one leg and counted for thirty seconds: whether Jones swayed to keep balance, raised his arms six inches or more, hopped on one leg, and put his foot down at any point.  Officer Wong testified he observed

16

Jones three times sway from side-to-side about two inches and twice raise his arms about eight inches; according to Officer Wong, these motions were of a sufficiently significant degree to constitute clues for purposes of the test.

Officer Wong then testified that Jones also "failed" the one-leg stand test.  He also testified this meant Jones was "not able to drive a car safely."

Officer Wong then testified regarding Jones's performance on the SFSTs as a whole, stating, "My evaluation is that based on all three of the standardized field sobriety tests that the defendant was not sober and that he was not able to operate a vehicle safely and that he did not pass[.]"  Over objection, he testified that Jones was intoxicated.  After completion of the SFSTs, Officer Wong arrested Jones for OVUII.

On cross-examination, with respect to the alleged heel-toe "miss" on the walk-and-turn test, Officer Wong testified that he "didn't have a measuring stick" and that he just "look[ed] and determine[d] if it's a half an inch."  Officer Wong conceded he was "approximating" the distance.  With respect to the HGN test, Officer Wong stated that the last time he had measured exactly, rather than merely estimated, forty-five degrees of eye displacement had probably been in 2010 at the police academy.

Officer Wong also testified, over the State's objection, that SFSTs provide the probable cause basis for an OVUII arrest

and that he was trained to "take the arrestee to the police station for further testing to determine intoxication[.]"  In response to a cross-examination question as to whether "the conclusion of intoxication is not based on the field sobriety test, the conclusion of intoxication is based upon what further testing is done at the police station, blood or breath or whatever," however, Officer Wong responded, "No, because if the person refuses to take a test, then how would we come to the conclusion that they're intoxicated?"

### 2.  The district court's ruling

The district court adjudicated Jones guilty of OVUII. Although the district court acknowledged Jones's argument that the individual clues were insufficient and that Jones's slurred speech may have been attributable to his natural speaking pattern, the district court nevertheless found "the accumulation sufficient" and described the evidence supporting conviction as "ample."  The district court then sentenced Jones to 240 hours of community service, a two-year license suspension, and a $700 fine.

### B.  ICA proceedings

In his opening brief, Jones argued that the district court erred in admitting, without proper foundation, Officer Wong's testimony that Jones failed each SFST and failed the SFSTs as a whole.  Jones maintained Officer Wong lacked the qualifications

18

to testify as an expert because he "never testified that he was certified to administer the test, only that he had received training from an individual who himself was also not certified." According to Jones, the district court committed "clear and obvious error" when it determined that Officer Wong's qualifications "met the standard" for being "certified."  Jones argued that, thus, Officer Wong's testimony regarding the results of the SFSTs was erroneously considered by the district court on the substantive issue of guilt beyond a reasonable doubt.

In addition, Jones claimed that the district court erred by admitting the SFSTs as evidence of intoxication rather than as merely evidence of probable cause.  Jones contended that this court's decision in Toyomura, while permitting an officer to provide a lay opinion that a defendant was intoxicated based on a lack of coordination, forbids reliance on the results of the SFSTs as the basis of that opinion.  Jones maintained that "the trial court failed to apply and enforce this prohibition" when Officer Wong offered an opinion on Jones's intoxication based solely on the SFSTs.

Jones also analogized his case to State v. Bebb, 99 Hawai'i 213, 53 P.3d 1198 (App. 2001), overruled on other grounds by State v. Maldonado, 108 Hawai'i 436, 121 P.3d 901 (2005), in which the officer based his lay opinion about an arrestee's

19

intoxication on his assessment of the SFSTs, but the State failed to lay sufficient foundation as required by Toyomura.  99 Hawai'i at 217–218, 53 P.3d at 1202-03.  Jones claimed the same error occurred here.

Jones also asserted that "there was not substantial evidence to support a finding of guilt beyond a reasonable doubt."  According to Jones, besides the results of the SFSTs that should not have been considered, the evidence supporting the conviction was scant: that he had run a red light, that Officer Wong smelled alcohol, and that his eyes were red and bloodshot.  Jones argued that he "contested" whether the light had been red when he passed through the intersection, that "[i]t is common knowledge that can be judicially noted that . . . every police officer reports" red, bloodshot eyes after an OVUII arrest, and that the smell of alcohol could have been coming from the passengers in the car, who had been drinking.

The State responded that Officer Wong was properly qualified as an expert.  The State argued that Officer Wong's testimony was relevant and reliable under Hawai'i Rules of Evidence ("HRE") Rule 702 (1992), and that it had laid sufficient foundation for him to opine as an expert on the SFSTs and Jones's performance.  Likewise, it argued that "any testimony by Officer Wong opining as to Jones being under the

influence of alcohol was admissible pursuant to HRE Rule 704," which permits an expert to opine even on an ultimate issue.

The State also argued that sufficient evidence existed to convict Jones.  The State, emphasizing that an appellate court must review the evidence "in the strongest light for the prosecution," cited the "strong odor of alcohol coming from [Jones's] breath," that Jones fumbled with his documents, that Jones exhibited clues on each SFST, and that his eyes were red and bloodshot.

In his reply, Jones argued that Officer Wong lacked certification to perform the SFSTs and that even Officer Wong's own instructor was not certified.  Jones also contended that no evidence was presented tending to establish Officer Wong's expertise to permit him to draw a correlation between the SFST results and sobriety.  Jones argued Officer Wong's expert testimony was therefore improper.  He also reiterated that a police officer testifying as a lay witness cannot base an opinion about a defendant's sobriety on the results of the SFSTs.

In its June 19, 2019 summary disposition order ("SDO") affirming Jones's conviction, the ICA reasoned that "Officer Wong was certified by NHTSA and IACP to instruct HPD officers to perform and evaluate the SFST[s,]" that he was qualified to "conduct and grade" each component test, and that it was not error for the district court "to allow Officer Wong to express

21

an expert opinion that Jones 'failed' the HGN test, the walk-and-turn test, and the one-leg stand test." State v. Jones, No. CAAP-16-0000345, at 5, 2019 WL 2521149 (App. June 19, 2019) (SDO) (footnote omitted).

The ICA also ruled that even if admission of this expert opinion testimony was erroneous, "the error was harmless because there was other substantial evidence supporting Jones's OVUII conviction." Jones, SDO at 4-5 n.5.

The ICA also held it was not error for the district court to rely on Officer Wong's expert opinions on Jones's SFST performance as substantive evidence of intoxication. Jones, SDO at 6. The ICA cited to Toyomura for the proposition that "foundational evidence of a police officer's knowledge of HPD's SFST procedure was necessary before the officer could be allowed to express an expert opinion about whether a defendant was intoxicated based upon an SFST." Id. The ICA concluded the State's foundation was sufficient for "Officer Wong, an NHTSA- and IACP-certified SFST instructor for HPD, to opine that Jones was intoxicated based upon the results of Jones's SFST." Id. The ICA distinguished this case from Bebb, stating, "[B]ecause we hold that Officer Wong was properly allowed to express an expert opinion that Jones was intoxicated, Bebb does not apply." Id.

Finally, the ICA rejected the contention that Jones's conviction was not supported by substantial evidence. Jones, SDO at 8-9. Even without the contested expert opinion testimony, the ICA concluded Officer Wong's lay observations supported the conviction. Id. Again citing Toyomura, the ICA ruled that an officer may describe the results of the SFSTs and offer a lay opinion about the defendant's sobriety from those results. Jones, SDO at 9 (citing Toyomura, 80 Hawai'i at 26, 904 P.2d at 911). Thus, even if Officer Wong should not have been qualified as an expert, the ICA ruled his testimony regarding how Jones performed the tasks on the SFSTs were admissible:

> Officer Wong's testimony about his observations of Jones's performance on the walk-and-turn and one-leg stand tests, along with Officer Wong's observations of Jones's operation of his car, the strong odor of alcohol coming from Jones's breath, Jones's red and bloodshot eyes, Jones's fumbling with his driver's license, and Jones's dropping his license in his lap, was sufficient to support Jones's conviction.

Id.[21]

## C. Certiorari application

On certiorari, Jones presents the four questions presented in Section I. In Section IV below, we address each question on certiorari in turn.

---

[21] But see discussion in Section IV.D. infra, explaining a police officer's lay opinion testimony regarding a driver's state of sobriety, if the testimony is based on the results of the driver's performance on the SFSTs, is inadmissible under existing law.

### III.  Standards of Review

#### A.  Admission of expert testimony

"Generally, the decision whether to admit expert testimony rests in the discretion of the trial court.  To the extent that the trial court's decision is dependent upon interpretation of court rules, such interpretation is a question of law, which [the appellate] court reviews de novo."  State v. Metcalfe, 129 Hawai'i 206, 222, 297 P.3d 1062, 1078 (2013) (alteration in original).

#### B.  Whether error is harmless beyond a reasonable doubt

In a criminal case, if there is a reasonable possibility that error might have contributed to a conviction, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which the error may have been based must be set aside.  State v. Cabrera, 90 Hawai'i 359, 365, 978 P.2d 797, 803 (1999).

#### C.  Sufficiency of the evidence

We review the sufficiency of evidence in a criminal case "in the strongest light for the prosecution."  State v. Kalaola, 124 Hawai'i 43, 49, 237 P.3d 1109, 1115 (2010).  "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact."  Id.  Substantial evidence means "credible evidence which is of sufficient quality and

probative value to enable a person of reasonable caution to support a conclusion."  Id.

### IV.  Discussion

**A.   The district court erred by permitting Officer Wong to express an expert opinion that Jones "failed" the SFSTs**

#### 1.   Requisite evidentiary foundation

In his first question on certiorari, Jones asks this court to hold that the district court erred by permitting Officer Wong to "express an expert opinion that Jones 'failed'" the elements of the SFSTs.  Jones maintains the district court erred in admitting, without proper foundation, Officer Wong's testimony that Jones "failed" the HGN test, the walk-and-turn test, and the one-leg stand test.

The ICA reasoned that because "Officer Wong was certified by NHTSA and IACP to instruct HPD officers to perform and evaluate the SFST[s,]" he was qualified to "conduct and grade" each component test, and it was not error for the district court "to allow Officer Wong to express an expert opinion that Jones 'failed' the HGN test, the walk-and-turn test, and the one-leg stand test."  Jones, SDO at 5 (footnote omitted).

HRE Rule 702 governs the admission of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or

25

> otherwise. In determining the issue of assistance to the trier of fact, the court may consider the trustworthiness and validity of the scientific technique or mode of analysis employed by the proffered expert.

Qualifying a witness as an expert requires that the proponent lay foundation establishing that "(1) the witness [is] qualified by knowledge, skill, training, or education; (2) the testimony [has] the capacity to assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) the expert's analysis [meets] a threshold level of reliability and trustworthiness." Metcalfe, 129 Hawai'i at 227, 297 P.3d at 1083. "[T]he determination of whether or not a witness is qualified as an expert in a particular field is largely within the discretion of the trial judge, and, as such, will not be upset absent a clear abuse of discretion." State v. Torres, 60 Haw. 271, 277, 589 P.2d 83, 87 (1978). HRE Rule 702 thus allows those qualified by "knowledge, skill, training, or education" to express expert opinions if the testimony has the capacity to assist the trier of fact to understand the evidence or to determine a fact in issue and the expert's analysis meets a threshold level of reliability and trustworthiness. Metcalfe, 129 Hawai'i at 227, 297 P.3d at 1083.

However, an expert's opinion testimony is not limitless. The HRE contemplates that "experts will have a specific field of expertise, and limit their opinion testimony to matters within that field." 129 Hawai'i at 244, 297 P.3d at 1100. Furthermore,

HRE Rule 704 (1980) provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  "However, it is well settled that 'questions which would merely allow the witness to tell the [fact-finder] what result to reach are not permitted.  Nor is the rule intended to allow a witness to give legal conclusions.'"  Vliet, 91 Hawai'i at 296-97, 983 P.2d at 197-98 (alteration in original) (ruling in OVUII case that any error in the officer's legal conclusion testimony that defendant's state of sobriety "would have been over the legal limit" was harmless beyond a reasonable doubt).

It appears no published Hawai'i appellate cases have actually upheld a ruling admitting expert opinion testimony that a driver "failed" a SFST.  State v. Nishi, 9 Haw. App. 516, 852 P.2d 476 (1993) addressed an officer's opinion testimony that the defendant had failed the "heel-to-toe, "leg raised," and "arch back" tests.  9 Haw. App. at 523, 852 P.2d at 480.  The ICA ruled this testimony inadmissible as HRE Rule 701[22] lay opinion testimony.  Id.  The ICA indicated lay opinion testimony

---

[22]   HRE Rule 701 (1984) provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

rationally based on an officer's perception regarding a driver's lack of coordination while performing SFSTs is admissible.  Id. The ICA noted, however, that a normal person would not be able to form opinions that a driver had "failed" the tests without knowledge of the HPD's field sobriety testing procedures, and that the record disclosed no such foundational evidence.  Id. Noting that the officer had not been qualified as an expert witness, the ICA ruled the district court abused its discretion in admitting the officer's testimony.  9 Haw. App. at 521 n.6, 523-24, 852 P.2d at 479 n.6, 480.

In Toyomura, we cited Nishi in holding that "foundational evidence as to the arresting officer's knowledge of HPD's field sobriety testing procedures[,]" which the record in that case did not disclose, was "necessary" for the admission of an "arresting officer's opinion testimony" that a driver had "failed to pass the FSTs[.]"  80 Hawai'i at 25-26, 904 P.2d at 910—11 (brackets omitted).  As noted in Bebb, the case heavily relied on by Jones, Toyomura actually stated:

> Toyomura is also correct in observing that insufficient foundation was laid to permit Officer Fujihara, based on Toyomura's performance of the FSTs, to render a lay opinion as to whether he was intoxicated, inasmuch as the prosecution elicited no testimony establishing that (1) the horizontal gaze nystagmus, "one-leg stand," and "walk-and-turn" procedures were elements of the HPD's official FST protocol, (2) there was any authoritatively established relationship between the manner of performance of these procedures and a person's degree of intoxication, and (3) Officer Fujihara had received any specific training in the administration of the procedures and the "grading" of their results.  Therefore, Toyomura is correct that Officer

> Fujihara was improperly permitted to render an opinion that he (i.e. Toyomura) was intoxicated based in part on Officer Fujihara's assessment of the results of the FSTs. . . .
>
> Toyomura is simply wrong, however, in concluding that the "rule in Nishi was violated in this case" in such a manner as to require that his DUI conviction be vacated. As the trial court correctly noted, "any . . . lay person," including a police officer, "can have an opinion regarding sobriety." As set forth above, Officer Fujihara expressly testified that, over the course of his approximately nineteen years as a police officer, he "had an opportunity to observe people who had been drinking and at different levels[.]" And, as noted, the record reflects that the trial court both assured Toyomura that he was considering Officer Fujihara's testimony "only from a lay point of view" and that the trial court applied its independent assessment of the evidence in finding Toyomura guilty of DUI. . . .
>
> . . . .
>
> Examined in the light of the entire proceedings and given the effect the whole record shows it to be entitled, we are convinced that there is no reasonable possibility that any improper lay opinion testimony on the part of Officer Fujihara contributed to Toyomura's DUI conviction. Accordingly, we hold that any error in the admission of that testimony was harmless.

99 Hawai'i at 216-17, 53 P.3d at 1201-02 (alterations and ellipses in original) (citations omitted) (second emphasis added) (quoting Toyomura, 80 Hawai'i at 26-27, 904 P.2d at 911-12).

As indicated by Chief Judge Burns in Bebb, the inclusion of the word "lay" before "opinion" in the third line of the excerpt above was erroneous: as stated in Bebb, "[i]n context, it appears that this word should have been 'expert' rather than 'lay' because 'testimony establishing' the three facts that follow would qualify Officer Fujihara as an expert." 99 Hawai'i at 216 n.4, 53 P.3d at 1201 n.4. Thus, Toyomura indicated that

29

if the three foundational requirements stated therein were met, an officer could testify that a driver had "failed" an SFST.

After Toyomura, the ICA held in Ferrer that the State had failed to lay a proper Toyomura foundation for the admission of an officer's expert opinion on whether the defendant had "passed" or "failed" the psychomotor field sobriety tests.[23]  95 Hawaiʻi at 430, 23 P.3d at 765.  Ferrer also separately held that the foundation laid had been insufficient to establish that the officer was duly qualified to conduct the HGN test and grade the test results.  95 Hawaiʻi at 424, 23 P.3d at 759.

Thus, although our appellate cases set out an evidentiary foundation framework for admission of expert opinion testimony that a driver "failed" a SFST, there are no reported cases upholding the admission of such expert opinion testimony.[24]

## 2.  Lack of "certification"

Jones contends insufficient foundation exists to qualify Officer Wong as an expert because Officer Wong never testified

_____

[23]    The psychomotor FSTs are the walk-and-turn test and the one-leg stand test.  Ferrer held that psychomotor FSTs are nonscientific in nature and that, therefore, an arresting officer may be permitted to testify as to a driver's performance on such tests and to give a lay opinion based on observations whether the driver was intoxicated when arrested.  95 Hawaiʻi at 427, 23 P.3d at 762.  Ferrer also held, however, that absent foundation testimony establishing conformity to NHTSA training standards, it was an abuse of discretion to allow an officer to testify about a driver's performance on the HGN test.  95 Hawaiʻi at 425, 23 P.3d at 760.

[24]    Vliet reaffirmed Nishi's holding that "a lay witness may express an opinion regarding another person's sobriety, provided the witness has had an opportunity observe the other person.  91 Hawaiʻi at 298, 983 P.2d at 199.

that he was certified to administer the SFSTs, only that he had received training from someone who himself was not certified. Jones therefore argues that it was error for the district court to qualify Officer Wong as an expert; he argued that just because an officer was "allowed" to perform the SFST, it did not mean "that he was therefore certified and qualified to do so."

This objection appears to arise from the ICA's opinion in Ito, in which the ICA stated:

> In this case, no evidence was adduced that [the officer] was duly qualified to conduct the HGN test and grade the test results. Over Defendant's objection, the district court "assum[ed] that the standard training from HPD is, I've always assumed it to be sufficient so I'll assume he has in fact been qualified to give the test." However, it is not clear what HPD's "standard training" consists of and whether HPD's standard training program meets the requirements of the NHTSA. Therefore, we have no way of knowing the extent and nature of [the officer's] HGN training, whether [the officer's] training was supervised by certified instructors, whether [the officer] was certified to administer the test . . . .

90 Hawai'i at 244, 978 P.2d at 210.[25]

With respect to Jones's contention regarding "certifications," the Hawai'i appellate cases setting forth foundational requirements for admission of expert opinion testimony regarding a driver's performance on SFSTs, see Section IV.A.1. above, do not contain any "certification" requirement. Officer Wong repeatedly testified he had been qualified to administer and evaluate SFSTs pursuant to NHTSA standards and the NHTSA manual. When asked whether he had been required to

---

[25]    See also supra note 8.

receive any certifications to become an SFST instructor for HPD, Officer Wong actually described the "certification" process as NHTSA and IACP qualifying senior instructors, who trained officers who then trained him.  The district court permitted Officer Wong to express various opinions regarding Jones's performance on the SFSTs constituting expert opinion testimony, describing Officer Wong at various times as "certified" and "qualified."  For example, the district court stated, "[I]n this case[, the officer] has himself been qualified to become a certified instructor, and has specifically testified that this is all in accordance with the NHTSA, I'm satisfied[.]"

According to NHTSA manuals, although NHTSA provides certificates of completion of SFST training, neither NHTSA nor IACP are certifying agencies for impaired driving courses, i.e., SFST and ARIDE, "includ[ing] both practitioners and instructors."  See NHTSA, DWI Detection and Standardized Field Sobriety Testing (SFST) Instructor Guide, 40, 44, available at https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/sfst_ig_full_manual.pdf [https://perma.cc/53W5-MSNV] ("NHTSA 2015 Instructor Guide").[26]

---

[26]   "[O]ur appellate courts have 'not hesitated in the past to take judicial notice [on appeal] of the validity of underlying scientific principles and the reliability of scientific techniques.'"  Vliet, 95 Hawaiʻi at 112, 19 P.3d at 60 (second alteration in original).  The trial and appellate record are replete with references to NHTSA and its manuals.  The district court referred to information from NHTSA manuals not received in
(continued. . .)

It therefore appears that although "certificates of completion" are provided, NHTSA does not actually "certify" SFST instructors or officers.[27]  In any event, existence or non-existence of "certification" is not dispositive, because pursuant to HRE Rule 702, a witness can render expert opinion testimony based on "knowledge, skill, experience, training, or education."  The ICA expressed concern in Ito that "it [was] not clear what HPD's 'standard training' consists of and whether HPD's standard training program meets the requirements of the NHTSA."  90 Hawai'i at 244, 978 P.2d at 210.  In Jones's case, Officer Wong testified regarding the training and testing he had undergone pursuant to NHTSA standards to administer and evaluate SFSTs.  In general, sufficient foundation was laid under Toyomura to qualify Officer Wong to render expert opinion

_____

(continued. . .)
evidence, when it stated that Officer Wong's recertification as a drug recognition expert included retraining that the presence of HGN "is not . . . an indicator of [] intoxication due to THC."  The district court in Ferrer had taken judicial notice of various NHTSA manuals, and the ICA opinion contains various excerpts from them.  95 Hawai'i at 420, 424, 23 P.3d at 755, 759.  Ito also contains various excerpts from NHTSA manuals.  90 Hawai'i 225, 978 P.2d 191, passim.  See also Webster v. State, 26 S.W.3d 717, 721 n.4 (Ct. App. Tex. 2000) ("Although the parties have not provided a copy of the 1992 NHTSA Manual, we take judicial notice of its contents.").  We therefore take judicial notice of the NHTSA 2015 Instructor Guide and the NHTSA 2015 Participant Manual.

[27]   Our appellate cases, however, contain references to NHTSA "certifications."  See, e.g., State v. Wilson, 144 Hawai'i 454, 458, 445 P.3d 35, 39 (2019) ("NHTSA Certified Instructor"); Mitchell, 94 Hawai'i at 398, 15 P.3d at 324 ("certified DUI instructor"); Ito, 90 Hawai'i at 244, 978 P.2d at 210 (discussing lack of evidence of whether the officer was certified to administer HGN test and whether his training had been supervised by certified instructors).  Based on the NHTSA manuals, it is unclear whether such "certifications" exist for Hawai'i officers.

testimony regarding Jones's performance on the SFSTs and clues of intoxication based on NHTSA standards.

### 3.   Expert opinion testimony that Jones "failed" the SFSTs

Jones more specifically asserts in his first question on certiorari, however, that the district court erred in allowing Officer Wong to express an expert opinion that Jones "failed" the HGN test, the walk-and-turn test, and the one-leg stand test. Jones argues the district erred in admitting Officer Wong's testimony that he had failed each test and failed the SFSTs as a whole.

As noted, Officer Wong's qualifications to testify as an expert as to his administration and evaluation of SFSTs were based entirely on NHTSA standards.  As he testified, SFSTs are conducted pursuant to NHTSA standards contained in the NHTSA manual.

NHTSA itself dictates, however, that the SFSTs are not scored "pass" or "fail," and are merely tools to assist an officer in seeing visible signs of impairment.  In other words, NHTSA itself does not recognize "pass" or "fail" scores on SFSTS:

> Remember, you should not testify that the defendant passed or failed the SFSTs.  The tests are not scored "pass" or "fail."  You should testify if the defendant completed the tests as instructed.  These tests simply identify impairment.

NHTSA, <u>DWI Detection and Standardized Field Sobriety Testing</u> <u>(SFST) Participant Manual</u>, 349, <u>available at</u> https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/sfst_p m_full_manual.pdf [https://perma.cc/X22R-3XXT] ("NHTSA 2015 Participant Manual"); NHTSA 2015 Instructor Manual, at 409; <u>see also</u> NHTSA 2015 Participant Manual, at 257 ("Remember that the SFSTs are a tool to assist you in seeing visible signs of impairment and are not a pass/fail test.").

Thus, the very standards upon which Officer Wong based his expertise explicitly state that SFSTs are not "pass" or "fail" tests.[28]  Hence, although our appellate cases set out an evidentiary foundation framework for admission of expert opinion testimony that a driver "failed" a SFST, no reported cases had previously upheld the admission of such expert opinion testimony. NHTSA standards do not allow such testimony.  Therefore, the district court erred in allowing Officer Wong to render such expert opinion testimony.

**B.    The erroneous admission of expert opinion testimony that Jones "failed" the SFSTs was not harmless beyond a reasonable doubt**

Jones next challenges the ICA's holding that even if it was error to permit Officer Wong to opine that Jones failed the SFST,

---

[28]    Based on our holding that it was error to allow Officer Wong to testify that Jones "failed" the SFSTs, we do not go through the thorough analysis conducted by the ICA in <u>Ferrer</u> regarding whether the officer met specific NHTSA requirements as to each test.  <u>See</u> 95 Hawai'i at 422-27, 23 P.3d at 757-62.

"the error was harmless because there was substantial other evidence supporting Jones's OVUII conviction."

"Erroneously admitted evidence is evaluated under the harmless beyond a reasonable doubt standard."  State v. Matsumoto, 145 Hawai'i 313, 327, 452 P.3d 310, 324 (2019) (citing State v. McCrory, 104 Hawai'i 203, 210, 87 P.3d 275, 282 (2004)). "Under this standard, '[t]he relevant question . . . is whether there is a reasonable possibility that error might have contributed to [the] conviction.'"  Id. (alteration and ellipsis in original) (emphasis omitted) (quoting State v. Han, 130 Hawai'i 83, 93, 306 P.3d 128, 138 (2013) (citing State v. Kim, 140 Hawai'i 421, 434 n.15, 402 P.3d 497, 510 n.15 (2017)).

"In applying the harmless beyond a reasonable doubt standard, the court is required to examine the record and determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction."  State v. Souza, 142 Hawai'i 390, 402, 420 P.3d 321, 333 (2018) (brackets omitted) (quoting State v. Mundon, 121 Hawai'i 339, 368, 219 P.3d 1126, 1155 (2009)).

Thus, the ICA applied an erroneous standard in ruling that "the error was harmless because there was other substantial evidence supporting Jones's OVUII conviction."  The existence of "other substantial evidence" supporting a conviction is not determinative of whether error is harmless beyond a reasonable

doubt. Rather, as our cases have repeatedly held, the issue is whether there is a reasonable possibility that the error contributed to a conviction. Cabrera, 90 Hawai‘i at 365, 978 P.2d at 803. If so, the error is not harmless beyond a reasonable doubt.

Granted, in a bench trial, "[i]t is well established that a judge is presumed not to be influenced by incompetent evidence." Vliet, 91 Hawai‘i at 298, 983 P.2d at 199 (alteration in original). In Vliet, this court found harmless an officer's improper opinion testimony regarding the defendant's sobriety and whether the officer believed the defendant was able to operate his vehicle safely that night. 91 Hawai‘i at 290, 983 P.2d at 191.

In Jones's trial, however, the district court repeatedly overruled Jones's objections and admitted Officer Wong's expert testimony that Jones had "failed" each SFST individually, and then that Jones "failed" the SFSTs as a whole. In adjudicating Jones guilty of OVUII at the conclusion of trial, the district court stated that although the individual clues regarding Jones's performance on the SFSTs were insufficient, and that Jones's slurred speech may have been attributable to his natural speaking pattern, the "accumulation" of evidence was "sufficient" and the evidence supporting conviction was "ample." On this record, there is a reasonable possibility that the erroneous

admission of expert opinion testimony that Jones had failed the SFSTs individually and as a whole contributed to Jones's conviction. Therefore, the error was not harmless beyond a reasonable doubt.

C. **The district court (a) did not err by admitting expert opinion testimony regarding Jones's performance on the SFSTs as substantive evidence of intoxication and not just as to probable cause for arrest, and (b) based on Toyomura, did not err in permitting expert opinion testimony that Jones was intoxicated, but (c) based on Vliet, did err in permitting expert opinion testimony that Jones had a blood alcohol content of 0.08 or above**

We have already concluded that Jones's conviction must be vacated. We address the third question on certiorari, however, to provide guidance on remand.

As noted, the third question has three parts. On certiorari, Jones reasserts the questions he raised to the ICA, which are: (a) whether the district court erred in admitting Officer Wong's expert opinion testimony regarding Jones's performance on the SFSTs as substantive evidence of intoxication and not just as to probable cause for arrest; (b) whether evidence was presented to establish Officer Wong's expertise to permit him to draw a correlation between the test results and sobriety to render an expert opinion that Jones was intoxicated; and (c) whether Officer Wong's expertise permitted him to testify that Jones had a blood alcohol level of 0.08 or above. The ICA found no error.

1.  **Expert opinion testimony regarding Jones's performance on the SFSTs as substantive evidence of intoxication and not just as to probable cause for arrest**

We first address Jones's assertion that the ICA erred in holding the HGN test and SFSTs were admissible for the purpose of establishing substantive evidence of intoxication beyond probable cause.

In Ito, the ICA stated:

> [W]e conclude that HGN test results have been sufficiently established to be reliable and are therefore admissible as evidence that police had probable cause to believe that a defendant was [OVUII].  Since the issue was not presented, we do not decide whether HGN test results are admissible at trial as evidence of a defendant's intoxication.

90 Hawai'i at 241, 978 P.2d at 207.

As contended by Jones, NHTSA states that the SFSTs are to determine whether probable cause exists to arrest a driver for OVUII: "The third phase in the DWI detection process.[29]   In

---

[29]   According to the NHTSA 2015 Participant Manual, the phases are as follows:

> In Phase One: Your first task is to observe the vehicle in operation.  Based on this observation, you must decide whether there is sufficient cause to command the driver to stop.  Your second task is to observe the stopping sequence.  You may want to take a picture of the vehicle or scene, especially if the vehicle was involved in a crash.
>
> In Phase Two: Your first task is to observe and interview the driver face to face.  Based on this observation, you must decide whether there is sufficient cause to instruct the driver to step from the vehicle for further investigation.  Your second task is to observe the driver's exit and walk from the vehicle.  You may want to take a photo of the defendant.
>
> In Phase Three: Your first task is to administer structured, formal psychophysical tests.  Based on these tests, you

(continued. . .)

this phase the officer administers field sobriety tests to determine whether there is probable cause to arrest the driver for DWI." NHTSA 2015 Participant Manual, at 23. NHTSA further defines "probable cause" as "more than mere suspicion; facts and circumstances within the officer's knowledge, and of which [they have] reasonably trustworthy information, are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." Id.

NHTSA does not, however, limit a driver's performance on the SFSTs to an establishment of probable cause. NHTSA instructs on the importance of officers taking field notes of a driver's performance on the SFSTs to "determine whether there is probable cause to arrest[,]" but points out that "to secure a conviction, more descriptive evidence is needed. The officer must be able to describe how the subject performed on the tests, and what the subject did." Id. at 268. Thus, NHTSA recognizes that an officer's observation and description of the manner in which a driver performs a field sobriety test is admissible at trial on the issue of impairment.

---

(continued. . .)
        must decide whether there is sufficient probable cause to
        arrest the driver for DWI. Your second task is then to
        arrange for (or administer) a Preliminary Breath Test.

Id. at 95.

Hawai'i appellate cases have also allowed for consideration of the manner in which a driver performs SFSTs as substantive evidence of intoxication, regardless of whether the officer was qualified as an expert. See, e.g., Toyomura, 80 Hawai'i at 26, 904 P.2d at 911 (specifying foundation necessary for expert opinion testimony regarding SFST performance); Nishi, 9 Haw. App. at 524, 852 P.2d at 480 (allowing police officer to give lay witness testimony regarding observations of a driver's coordination problems while performing SFSTs).

Therefore, evidence of a driver's conduct and physical actions while performing a SFST is not only relevant to probable cause for an arrest, but is also admissible as indicia of whether a driver was OVUII beyond a reasonable doubt.

### 2. Expert opinion testimony that Jones was intoxicated

With respect to the second part of this question on certiorari, the ICA stated that pursuant to Toyomura, "foundational evidence of a police officer's knowledge of HPD's SFST procedure was necessary before the officer could be allowed to express an expert opinion about whether a defendant was intoxicated based upon an SFST." The ICA concluded the State's foundation was sufficient for "Officer Wong, an NHTSA- and IACP-certified SFST instructor for HPD, to opine that Jones was intoxicated based upon the results of Jones's SFST."

41

In Toyomura, we cited Nishi and stated that "foundational evidence as to the arresting officer's knowledge of HPD's field sobriety testing procedures[,]" which the record in that case did not disclose, was "necessary" for the admission of an "arresting officer's opinion testimony" that a driver had "failed to pass the FSTs[.]"  80 Hawai'i at 25-26, 904 P.2d at 910—11 (brackets omitted).  The issue Jones directly presents in this case, whether such opinion testimony should be excluded even when the requisite foundation has been laid, was not presented in Toyomura.  In addition, Vliet, discussed in more detail below, was decided after Toyomura and pertains to whether such testimony would be admissible.  And as further discussed below, there are significant issues with allowing such testimony.  We recognize, however, that Toyomura indicated that an officer could express an expert opinion that a driver was intoxicated as long as sufficient foundation was laid.

Here, Officer Wong testified he had been trained and re-trained and had passed written and practical examinations regarding the administration and evaluation of SFSTs in accordance with NHTSA standards, and he had performed hundreds of SFSTs.  Therefore, an adequate foundation was laid, and the district court did not err in allowing Officer Wong to testify as an expert in the administration and evaluation of SFSTs and to express his opinions regarding the NHTSA-recognized "clues of

intoxication" in Jones's performance of the SFSTs.  Thus, under Toyomura, in this case, Officer Wong was properly allowed to render expert opinion testimony regarding his evaluation of Jones's performance on the SFSTs and to render expert opinion testimony that Jones was "intoxicated."

3.    **Expert opinion testimony that Jones had a blood alcohol level of 0.08 or above**

Officer Wong's expert opinion testimony, however, exceeded the scope of allowable testimony as an expert under existing law.  Officer Wong not only testified as to the clues of intoxication he observed during Jones's performance of the SFSTs, he also opined that Jones had a blood alcohol content of 0.08 based on his performance on the SFSTs.  First, as Jones argues, Officer Wong's testimony did not provide adequate foundation to allow him to draw such a correlation based on Jones's performance on each of the SFSTs.  Officer Wong did testify that the NHTSA practical exam included going over studies that described the findings and "success rate" of each SFST.  He never testified, however, as to what "success rate" meant.  Then, when Officer Wong testified that a "fail" meant Jones had a blood alcohol content of 0.08 or above and the DPA asked Officer Wong whether there were any studies about the HGN test that would point toward that conclusion, the district court sustained Jones's objection.  Therefore, no foundation was laid that clues of

intoxication correlated to a blood alcohol level of 0.08 or above.

In addition, it is well-settled that opinion testimony should not merely tell the fact-finder what result to reach, and witnesses are not permitted to give legal conclusions.  See State v. Batangan, 71 Haw. 552, 559, 799 P.2d 48, 52 (1990) (stating that HRE Rule 704 does not permit opinion testimony that merely tells the jury what result to reach); Vliet, 91 Hawai'i at 296-97, 983 P.2d at 197-98 (noting that HRE Rule 704 does not allow a witness to give legal conclusions).  Although Toyomura indicated that if sufficient foundation existed of a police officer's knowledge of SFST procedures the officer could be allowed to express an expert opinion about whether a defendant was intoxicated based upon SFST performance, our ruling in Vliet, which came after Toyomura, directly addressed the issue.  In Vliet, an OVUII case, we noted that although HRE Rule 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact[,]" "questions which would merely allow the witness to tell the [fact-finder] what result to reach are not permitted."  91 Hawai'i at 296, 983 P.2d at 197.  We further noted that HRE Rule 704 is not "intended to allow a witness to give legal conclusions."  91 Hawai'i at 296-97, 983 P.2d at 197-98.

Vliet specifically addressed an officer's testimony that a defendant's state of sobriety "would have been over the legal limit."  91 Hawai'i at 296-97, 983 P.2d at 197-98.[30]  This court held that the officer's testimony amounted to a legal conclusion and was therefore impermissible.  91 Hawai'i at 298, 983 P.2d at 199 ("Clearly, Officer Uehara was attempting to offer a legal conclusion as to whether [the defendant] was DUI.").  Although in Vliet we ruled the admission of this testimony harmless beyond a reasonable doubt, we identified its problematic nature.

The officer's testimony in Vliet is comparable to Officer Wong's testimony that Jones had a blood alcohol level of 0.08 or above.  Jones was charged with OVUII in violation of HRS § 291E-61(a)(1).  This subsection proscribes operating a vehicle "while under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty."  Officer Wong's testimony that Jones had a blood alcohol level of 0.08 or above based on his performance on the SFSTs was tantamount to telling the fact-finder what result to reach and constituted legal conclusion testimony in violation of Vliet.  Therefore, on this basis also, the district court erred by

---

[30]    As recognized by the concurrence and dissent, Vliet also found impermissible the officer's testimony that the defendant "did poorly, he would be driving poorly too[.]"  91 Hawai'i at 298, 983 P.2d at 199.  Vliet indicated that the officer's testimony that he believed the defendant was not able to operate his vehicle safely that night was improper.  Id.

permitting Officer Wong to testify as an expert that Jones had a blood alcohol level above 0.08.

**D.    Prospectively, police officers may no longer testify, whether in a lay or expert capacity, that a driver appeared "intoxicated"**

In this case, Officer Wong testified as an expert witness, and the issues raised by Jones on certiorari relate to Officer Wong's expert testimony.  The ICA ruled, however, that Officer Wong's testimony was in any event admissible as lay opinion testimony as an officer may describe the results of the SFSTs and offer a lay opinion about the defendant's sobriety from those results.  Jones, SDO at 9 (citing Toyomura, 80 Hawai'i at 26, 904 P.2d at 911).

To the extent the ICA stated that an officer's lay opinion testimony can be based on SFST results, this conclusion was erroneous under existing law.  As Chief Judge Burns stated in Bebb,

> In Toyomura, the Hawai'i Supreme Court concluded that a police officer, based on [their] "lay" observations, can have a "lay" opinion that an arrestee is not sober. It also says, however, that a police officer cannot base [their] "lay" opinion that an arrestee is not sober on [their] "assessment of the results of the FSTs."

99 Hawai'i at 217, 53 P.3d at 1202 (citing Toyomura, 80 Hawai'i at 26, 904 P.2d at 911).

Under HRE Rule 701, a lay opinion must be "rationally based on the perception of the witness[.]"  As recognized in Nishi, which we adopted in Toyomura, an officer's opinion that a driver

46

was intoxicated based upon SFST performance would necessarily rely on that officer's knowledge of SFSTs and would not be based solely on the officer's perception.  See 9 Haw. App. at 523, 852 P.2d at 480 ("A normal person may not necessarily form such an opinion if [they] had not been taught to grade the performance of the three field sobriety tests[, and thus] this was a situation where foundational evidence as to [the arresting officer's] knowledge of HPD's field sobriety testing procedures was necessary.").  Thus, as recognized in Bebb, Toyomura, which adopted Nishi, ruled that although an officer performing a SFST may be able to testify as to what would constitute lay observations, such as the general physical condition or coordination of a driver, an officer's opinion regarding a driver's level of intoxication cannot be based on the driver's SFST results.

Thus, under existing law, a police officer cannot provide a lay opinion that a driver was "intoxicated" or with respect to the driver's state of sobriety if the testimony is based on the results of the driver's SFST performance.[31]  Our existing law

---

[31]    Thus, the dissent misstates that law when it states that:

> Toyomura also recognized that a lay witness, including an officer testifying as such, can form an opinion as to whether someone they observed is intoxicated based on information besides the SFSTs, and Hawai'i courts have long followed this rule.  Toyomura, 80 Hawai'i at 25-27, 904 P.2d at 910-12 ("[A]ny lay person, including a police officer, can have an opinion regarding sobriety." (ellipsis,
>
> (continued. . .)

states that an officer can, however, offer expert opinion testimony that a driver was "intoxicated" assuming sufficient foundation, and an officer can offer lay opinion testimony that a driver was "intoxicated" if that testimony is based on general observations regarding a driver's coordination.  Toyomura, 80 Hawai'i at 25-26, 904 P.2d at 910—11.

We now prospectively hold that police officers may no longer testify, whether in a lay or expert capacity, that a driver appeared "intoxicated."[32]

---

(continued. . .)
        citation, and internal quotation marks omitted)); see also State v. Bebb, 99 Hawai'i 213, 217, 53 P.3d 1198, 1202 (App. 2001) (recognizing that "a police officer, based on his or her 'lay' observations, can have a 'lay' opinion that an arrestee is not sober" (citation omitted)).

(Alteration in original.) (Footnote omitted.)

[32]   As we explain, our prospective holding is based on HRE Rule 704. Although not necessary to our holding, we also note that lay opinion testimony from an officer conducting a SFST from whom expert testimony is sought raises additional concerns recognized in State v. Torres, 122 Hawai'i 2, 222 P.3d 409 (App. 2009):

        When enacted in 1980, HRE Rules 701 and 702 were modeled upon and were virtually identical to the corresponding Federal Rules of Evidence (FRE) Rules 701 and 702.  See Commentary to HRE Rule 701 and HRE Rule 702.  In 2000, FRE Rule 701 was amended to specifically provide that lay opinions could "not [be] based on scientific, technical, or other specialized knowledge within the scope of [FRE] Rule 702."  The Advisory Committee Notes to the 2000 amendment to FRE Rule 701 explain that the purpose of the amendment was to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing."  FRE Rule 701 advisory committee's note.  The 2000 amendment to FRE Rule 701 also ensures that a party will not evade rules requiring pre-trial disclosure of expert witnesses by "simply calling an expert witness in the guise of a layperson."  Id.  The 2000 amendment to
        (continued. . .)

(continued. . .)

>FRE 701 incorporates the distinction set forth in State v. Brown*,* 836 S.W.2d 530, 549 (Tenn. 1992), that "lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'"  FRE Rule 701 advisory committee's note.

>Although Hawai'i has not amended HRE Rule 701 to incorporate the 2000 amendment to FRE Rule 701, the Hawai'i Supreme Court has implicitly recognized the limitation on lay opinion testimony set forth in the 2000 amendment to FRE Rule 701.  In cases upholding the admission of opinion testimony as lay opinion, the supreme court justified its decisions by noting that the challenged testimony did not require "scientific, technical, or other specialized knowledge" within the scope of HRE Rule 702.  Jenkins*,* 93 Hawai'i at 105, 997 P.2d at 31 ("Jenkins does not suggest, nor does the record reflect, that testimony regarding whether the pouches qualified as rigidly constructed containers or commercial gun cases required 'scientific, technical, or other specialized knowledge,' such that expert testimony would have been required pursuant to HRE Rule 702 (1993)."); Yoneda v. Tom*,* 110 Hawai'i 367, 385, 133 P.3d 796, 814 (2006) ("Yoneda's testimony as to the events leading up to the accident and his observations regarding the location of the restroom building and the route of the cart path did not require 'scientific, technical, or other specialized knowledge' such that expert testimony would have been required pursuant to HRE Rule 702[.]").

122 Hawai'i at 29–30, 222 P.3d at 436–37, aff'd and corrected on other grounds by State v. Torres, 125 Hawai'i 382, 262 P.3d 1006 (2011) (alterations in original).  Thus, pursuant to Torres, for opinion testimony from officers regarding their evaluation of a driver's performance on SFSTs to be admissible, they must be properly identified as expert witnesses.  Federal courts also recognize an additional concern with "proffering an expert in lay witness clothing."  As stated by the Tenth Circuit Court of Appeals:

>We recognize that witnesses who testify in both a lay capacity and an expert capacity may present special risks at trial.  The "aura of special reliability and trustworthiness surrounding expert testimony," may give the witness "unmerited credibility" and "create[] a risk of prejudice 'because the jury may infer that the agent's opinion about the criminal nature of the defendant's activity is based on knowledge of the defendant beyond the evidence at trial.'"  United States v. Dukagjini, 326 F.3d 45, 53–54 (2d Cir. 2003) (citations omitted).  In light of this concern, some circuits have encouraged district courts to take precautionary measures, including warning the jury about the witness's dual roles or bifurcating the questioning to clearly demarcate lay and expert testimony

(continued. . .)

As discussed in Section IV.C. above, an officer cannot express an opinion, whether in a lay or expert capacity, that simply tells a factfinder what result to reach or that provides a legal conclusion.  As discussed, Vliet held that although HRE Rule 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact[,]" "questions which would merely allow the witness to tell the [fact-finder] what result to reach are not permitted." 91 Hawaiʻi at 296, 983 P.2d at 197.  Vliet also held that [HRE Rule 704] is not intended "to allow a witness to give legal conclusions."  91 Hawaiʻi at 296–97, 983 P.2d at 197–98; see also State v. Pinero, 70 Haw. 509, 520-21, 778 P.2d 704, 712 (1980) (holding conclusory questions with answers that told jury what result to reach improper under HRE Rule 704).

On these bases, Vliet thus found impermissible an officer's testimony that a defendant's state of sobriety "would have been

_____

(continued. . .)
         offered by the same witness, to protect against these
         dangers.  See, e.g., United States v. Rios, 830 F.3d 403,
         414-15 (6th Cir. 2016), cert. petition filed, No. 16-7314
         (Dec. 27, 2016); United States v. Moralez, 808 F.3d 362,
         365-67 (8th Cir. 2015); United States v. Haines, 803 F.3d
         713, 730-32 (5th Cir. 2015); United States v. Vera, 770
         F.3d 1232, 1242-43 (9th Cir. 2014); United States v. Garcia,
         752 F.3d 382, 392 (4th Cir. 2014); United States v. Tucker,
         714 F.3d 1006, 1016 (7th Cir. 2013); United States v.
         Flores-De-Jesus, 569 F.3d 8, 21 (1st Cir. 2009); Dukagjini,
         326 F.3d at 53-56.

United States v. Sandoval, 680 F. App'x 713, 718-19 (10th Cir. 2017).  As noted, however, our prospective holding is based on HRE Rule 704.

over the legal limit." 91 Hawai'i at 296-97, 983 P.2d at 197-98.
Vliet also found impermissible the officer's testimony that the
defendant "did poorly, he would be driving poorly too" and that
he believed the defendant was not able to operate his vehicle
safely that night. 91 Hawai'i at 298, 983 P.2d at 199. The
dissent concedes that, pursuant to Vliet, testimony that the
driver "would be driving poorly" and was "over the legal limit"
reflect improper legal conclusions. The dissent disagrees,
however, that an officer's testimony that a driver was
"intoxicated," whether given in a lay or expert capacity, tells
the factfinder what result to reach, and invades the province of
the factfinder.

There is no real qualitative distinction between the
testimony found improper in Vliet and our other caselaw, however,
with testimony that a driver was "intoxicated." As recently
reaffirmed in State v. Ikimaka, No. SCWC-16-0000003, 2020 WL
3056494 (Haw. June 9, 2020):

> Officer Hsu's testimony on Ikimaka's intent and knowledge
> was [] impermissible because it expressed a legal
> conclusion as to Ikimaka's state of mind. See State v.
> Vliet, 91 Hawai'i 288, 296-97, 983 P.2d 189, 197-98 (1999).
> While HRE Rule 704 (1980) permits testimony "embrac[ing] an
> ultimate issue to be decided by the trier of fact," it
> "does not allow 'the admission of opinions which would
> merely tell the jury what result to reach[.]'" State v.
> Batangan, 71 Haw. 552, 559, 799 P.2d 48, 52 (1990) (quoting
> HRE Rule 704 cmt.); see also State v. Ryan, 112 Hawai'i 136,
> 141, 144 P.3d 584, 589 (App. 2006) (holding an officer's
> opinion testimony that the complaining witness was truthful
> impermissibly invaded the province of the jury to determine
> the facts). "Nor is [HRE Rule 704] intended to allow a

51

> witness to give legal conclusions." <u>Vliet</u>, 91 Hawai‘i at
> 296-97, 983 P.2d at 197-98.

No. SCWC-16-0000003, at 33 (alterations in original).

Allowing an officer to testify that a driver was "intoxicated" likewise expresses a legal conclusion and invades the province of the factfinder.  Webster's Third International Dictionary defines "intoxicated" as "being under the marked influence of an intoxicant: DRUNK, INEBRIATED."  An officer's testimony that a driver was "intoxicated," whether given in a lay or expert capacity, invades the province of the factfinder to determine whether a person drove "[w]hile under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[,]" HRS § 293E-61(a)(1), and is tantamount to a legal conclusion that they did.  Accordingly, testimony that a driver was "intoxicated" violates HRE Rule 704.[33]

---

[33]   We also observe that the definition of the term "intoxicated" appears to be evolving, and that the term can mean different things to different people.  As noted, the 1966 Webster's Third International Dictionary defines "intoxicated" as "being under the marked influence of an intoxicant: DRUNK, INEBRIATED."  The 1988 Webster's Ninth Collegiate Dictionary defines the term as "affected by [] alcohol[.]"  The 2019 Black's Law Dictionary defines the term as "[h]aving the brain affected by the presence in the body of a drug or alcohol.  —Also termed <u>inebriated</u>."  <u>Intoxicated</u>, <u>Black's Law Dictionary</u> (11th ed. 2019).  In addition, we have cited other legal definitions of "intoxication" above.

Jones was charged with driving "[w]hile under the influence of alcohol in an amount sufficient to impair [his] normal mental faculties or ability to care for [himself] and guard against casualty" under HRS § 291E-61(a)(1).  He was not charged with driving under the influence of other intoxicants.  Yet, a person can appear "intoxicated" even if under the influence of other substances.  Thus, admission of testimony from a police officer, whether in a lay or expert capacity, that a person was "intoxicated," raises significant HRE Rule 403 concerns based on "unfair prejudice, confusion of the issues, or

(continued. . .)

We therefore prospectively hold that for trials occurring after the date of this opinion, police officers may no longer testify, whether in a lay or expert capacity, that a driver appeared "intoxicated."[34]

**E.    Jones's conviction was supported by substantial evidence**

Finally, Jones alleges there was not substantial evidence to support his conviction.  Citing Bebb, Jones asserts the evidence was insufficient to support his conviction because besides the results of the SFSTs - which he challenges - the other evidence supporting guilt was "subjective."  Moreover, he claims that "[n]o evidence was proffered as to the correlation between red, watery eyes and intoxication, or whether such indicia rise to the level of substantial evidence of alcohol consumption in an amount sufficient to impair a person's normal mental faculties[.]"

We review the sufficiency of the evidence supporting a criminal conviction in the light most favorable to the State.

---

(continued. . .)
misleading the jury [or factfinder judge]" as to what "intoxicated" means. See HRE Rule 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").  In addition, such opinion testimony, whether offered in a lay or expert capacity, also may be needless and cumulative when, for example, the officer is able to testify as to the driver's physical actions, conduct, and appearance or when a video of the SFSTs exists.

[34]    This is a "new rule" that changes standards upon which courts and law enforcement have relied.  Therefore, we give it purely prospective effect. See Lewi v. State, 145 Hawai'i 333, 349 n.21, 452 P.3d 330, 346 n.21 (2019).

Kalaola, 124 Hawai'i at 49, 237 P.3d at 1115.  "'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion."  Id.

Jones argues that substantial evidence was lacking that he was "under the influence of alcohol in an amount sufficient to impair [his] normal mental faculties."  HRS § 291E-61(a)(1).

As indicated by the ICA, Jones's conviction was supported by "Officer Wong's observations of Jones's operation of his car, the strong odor of alcohol coming from Jones's breath, Jones's red and bloodshot eyes, Jones's fumbling with his driver's license, and Jones's dropping his license in his lap[.]"  In addition, we have held that Officer Wong's expert opinion testimony as to clues of intoxication based on Jones's performance on the SFSTs was properly admitted.  Thus, substantial evidence supported Jones's conviction.

## V.  Conclusion

Based on these reasons, we vacate the ICA's July 15, 2019 judgment on appeal and the district court's March 22, 2016 judgment of conviction, and we remand this matter to the

district court for further proceedings consistent with this

opinion.

Michael S. Zola,                    /s/ Sabrina S. McKenna
for petitioner
                                    /s/ Richard W. Pollack
Sonja P. McCullen,
for respondent                      /s/ Michael D. Wilson

