**STATE OF HAWAII**, Plaintiff–Appellee, v. **BERNADINE L. BROWN**, Defendant–Appellant

NO. 12925

(CR. NO. 87–7585)

JUNE 19, 1989

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

## OPINION OF THE COURT BY NAKAMURA, J.

Bernadine L. Brown was charged with criminal contempt of court because she failed to appear in the District Court of the First Circuit for trial on a charge of promoting a detrimental drug.[1] She was convicted of contempt after a bench trial conducted by the judge whose order she was accused of disobeying, and she appeals. Concluding from a review of the record that the conviction cannot be upheld because the State did not

---

[1] The charge against Ms. Brown was framed in these terms:

On or about May 26, 1987, in the Honolulu District, City and County of Honolulu, State of Hawaii, you intentionally disobeyed or resisted the process, injunction, or other mandate of a Court by failing to appear at the place and within the time specified in the summons or citation issued to you, violating Section 710-1077,A, subsection G, of the Hawaii Revised Statutes.

The relevant provisions of HRS § 710-1077 read:

(1)     A person commits the offense of criminal contempt of court if:
. . . .

(g)     He intentionally disobeys or resists the process, injunction, or other mandate of a court[.]

prove a wilful disobedience of the court's mandate and the accuser sat in judgment of the defendant, we reverse the trial court.

## I.

In May of 1987 Ms. Brown was concurrently a defendant in a criminal case pending in the District Court of the First Circuit and a defendant in a case pending in the United States District Court for the District of Hawaii. She was represented by a court–appointed attorney in the state proceeding but was without counsel in the other. A hearing in the federal case was scheduled for May 26, 1987; subsequently the state court set aside the same date for the continued trial of the defendant's case. Ms. Brown was not in court when the continued trial was scheduled, her pres- . ence having been waived by counsel.

When the state case was called at 1:30 p.m. on May 26th, counsel informed the presiding judge, Judge Richard Lum, that the defendant was not present because of the scheduling conflict. Judge Lum thereupon directed counsel to call the clerk of the federal court to ascertain the defendant's presence there. Counsel learned, however, that the defendant left the federal court in the morning at the conclusion of the hearing in her case. When Judge Lum was so advised, he ordered that counsel's statement be made a matter of record. He then issued a bench warrant for the defendant's arrest. But this did not culminate in a summary contempt proceeding.

A criminal contempt proceeding against Ms. Brown was instituted thereafter, and trial thereon was set for January 22, 1988. When the case was called for trial on January 22nd before the judge then presiding, Judge Marcia Waldorf, the deputy prosecuting attorney assigned to the case objected to her hearing the matter. The case, the prosecutor asserted, "must be heard before Judge Lum" since "the facts of contempt are known to [him]." Judge Waldorf advised the prosecutor that his stance might well be apt in a summary contempt proceeding, but it was "most unusual that a Contempt of Court trial need[ed] to be [heard by] any particular judge." Nonetheless, she continued the case for trial by Judge Lum.

Before proceeding to trial on the contempt charge, the defendant moved for the recusal of Judge Lum, arguing his impartiality could be questioned on several grounds. She maintained he was a possible witness and also might be biased because she was appealing the judgment he ren-

dered in the drug possession case. The judge denied the motion "because we have the record." "We just make sure," he added, "that Miss Brown would be given a day in court."

When Ms. Brown's "day in court" on the contempt charge began, Melvin Wong, who defended Ms. Brown in the drug possession case, testified that he was advised of the scheduling of the case for continued trial on May 26, 1987. He said he was so informed a week before the scheduled trial date and in turn informed the defendant. Ms. Brown testified that when she apprised Mr. Wong of the federal court hearing set for May 26th, he told her about a hearing "in the state district court that afternoon." She further testified that when she informed the federal court of the scheduling conflict, she was told to seek a continuance of the state court matter. And after speaking to Mr. Wong, she was under the impression that he would "take care of the state court matter for her."

Judge Lum, however, found the defendant "was aware of the [state court] hearing on May 26, 1987, at 1:30," no motions were filed "to inform the court [of] a conflict," no objections were raised to the scheduling of the state court hearing, and the defendant "did not show up for the court proceeding which was specially set for [her]." He adjudged her guilty of criminal contempt of court and assessed a fine of $100. The defendant moved unsuccessfully for reconsideration of the decision on grounds that an intent to disobey the court was not shown and she was not accorded a fair trial before an impartial tribunal.

## II.

Ms. Brown urges reversal of the trial court's judgment on the grounds upon which its reconsideration was sought. We begin our analysis of the issues posed on appeal with an overview of the offense of criminal contempt of court.

## A.

Criminal contempt, as the term denotes, "is punitive in purpose." *Murray v. Murray*, 60 Haw. 160, 162, 587 P.2d 1220, 1222 (1978). Thus, one accused of criminal contempt "is entitled to the benefit of all constitutional safeguards, and cannot be convicted except by proof beyond a reasonable doubt[.]" *Hawaii Pub. Employment Relations Bd. v. Hawaii*

*State Teachers Ass'n (HPERB v. HSTA)*, 55 Haw. 386, 392, 520 P.2d 422, 426 (1974). And "[i]ntent is an essential element" of the crime. *Id.*

The crime is defined in HRS § 710–1077(1); it is punishable generally as a misdemeanor. HRS § 710–1077(2). By reason of HRS § 710–1077(1)(g), one would be guilty of contempt of court if "[h]e intentionally disobeys or resists the process, injunction, or other mandate of a court[.]" The court, however, "may treat the commission of an offense [defined in HRS § 710–1077](1) as a petty misdemeanor, in which case:

. . . .

   (b)      If the offense was not committed in the immediate view and presence of the court, nor under such circumstances that the court has knowledge of all of the facts constituting the offense, the court shall order the defendant to appear before it to answer a charge of criminal contempt of court; the trial, if any, upon the charge shall be by the court without a jury; and proof of guilt beyond a reasonable doubt shall be required for conviction."

HRS § 710–1077(3)(b). We have ruled that a failure to appear as required by the court is an offense not committed in the immediate view and presence of the court. *State v. Ryan*, 59 Haw. 425, 428, 583 P.2d 329, 332 (1978).

"Whenever any person is convicted of criminal contempt of court or sentenced therefor, the particular circumstances [must] be fully set forth in the judgment and in the order or warrant of conviction." HRS § 710–1077(5). A "failure of the trial court to comply with [this requirement,]" we have said, "warrants a reversal [of the conviction]." *State v. Schutter*, 60 Haw. 221, 222, 588 P.2d 428, 429 (1978). And "[i]n any proceeding for review of the judgment, sentence, or commitment, no presumption of law shall be made in support of the jurisdiction to render the judgment, pronounce the sentence, or order the commitment." HRS § 710–1077(5).

## B.

Here, the trial court set forth the particular circumstances that led it to conclude Ms. Brown's disobedience of its mandate to appear for trial was wilful. But the facts recounted by the court were insufficient to

enable it to infer the defendant wilfully disobeyed its mandate to appear for trial. *Cf. State v. Ryan*, 59 Haw. at 429, 583 P.2d at 332 ("[t]he mere fact of appellant's absence . . . was not sufficient to enable [the court] to infer the intent with which appellant absented himself."). Moreover, a review of the whole record reveals the evidence is insufficient to sustain a conviction. For we cannot say "there is substantial evidence to support the conclusion of the trier of fact[]" that the defendant wilfully disobeyed the court. *State v. Smith*, 59 Haw. 456, 464, 583 P.2d 337, 343 (1978) (quoting *State v. Cummings*, 49 Haw. 522, 533, 423 P.2d 438, 445 (1967)).

The defendant's uncontradicted testimony was that she informed her attorney of the federal court hearing and understood he would "take care of the state court matter for her[.]" Mr. Wong acknowledged that he "gave her [this] impression." Given these circumstances, the defendant's disregard of the mandate was not a deliberate failure to appear as directed. Since "[w]illfulness in [a] context [of criminal contempt] means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order," *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 782 (9th Cir. 1983), we reverse the defendant's conviction.

## III.

Ordinarily we do not deal with other issues raised by an appellant, particularly those of constitutional dimension, after concluding the evidence in the case is insufficient to sustain his conviction. But the other question raised by the defendant implicates a matter of public concern that is likely to recur, and we deem it worthy of resolution here.

## A.

The question is whether a judge who causes a criminal contempt proceeding to be instituted may then sit with impunity in judgment of the accused. We begin our analysis with the fundamental propositions that "[c]riminal contempts are crimes, [one] accused [of criminal contempt] is entitled to the benefit of all constitutional safeguards," *HPERB v. HSTA*,

55 Haw. at 392, 520 P.2d at 426,[2] and "[a] fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955).

"Fairness of course requires an absence of actual bias in the trial of cases." *Id.* So HRS § 601-7(b) provides that:

> Whenever a party to any suit, action, or proceeding, civil or criminal, makes and files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against the party or in favor of any opposite party to the suit, the judge shall be disqualified from proceeding therein. Every such affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be filed before the trial or hearing of the action or proceeding, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one affidavit; and no affidavit shall be filed unless accompanied by a certificate of counsel of record that the affidavit is made in good faith. Any judge may disqualify oneself by filing with the clerk of the court of which the judge is a judge a certificate that the judge deems oneself unable for any reason to preside with absolute impartiality in the pending suit or action.

"But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." *In re Murchison*, 349 U.S. at 136. HRS § 601-7(a) thus commands that:

> No person shall sit as a judge in any case in which the judge's relative by affinity or consanguinity within the third degree is counsel, or interested either as a plaintiff or defendant, or in the issue of which the judge has, either directly or through such

---

[2] But the Supreme Court has "recognized that certain specific constitutional protections, such as the right to trial by jury, are not applicable to those criminal contempts that can be classified as petty offenses, as is true of other petty crimes as well. *Bloom v. Illinois*, 391 U.S. 194, 208–210 (1968)." *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, ____ n.5, 108 S. Ct. 1423, 1430 n.5 (1988). HRS § 710-1077(3)(b) thus provides that trial of a criminal contempt treated as a petty misdemeanor, as it was here, "shall be by the court without a jury."

> relative, any pecuniary interest; nor shall any person sit as a
> judge in any case in which the judge has been of counsel or on
> an appeal from any decision or judgment rendered by the judge.

The statute does not expressly forbid a judge responsible for the institution of a criminal contempt charge to sit in judgment of the accused; it does not appear to cover the situation. Still, no one would argue seriously that the disqualification of judges on grounds of actual bias, kinship, pecuniary interest, and prior involvement prevents unfairness in all cases.

The relevant teaching of the Supreme Court is that "[e]very procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law." *Tumey v. Ohio*, 273 U.S. 510, 532 (1927). When criminal contempt is charged, it signifies that the accuser believes the defendant's conduct was contemptuous. A procedure whereby "the trial, if any, upon the charge shall be by the [judge who lodged it,] without a jury[,]" HRS § 710–1077(3)(b), denies the accused due process; it offers a temptation to the judge to forget that "proof beyond a reasonable doubt shall be required for conviction." HRS § 710–1077(3)(b). Due process, in the circumstances, called for a trial before someone other than the accuser.[3]

We are mindful that this ruling may have the effect of sometimes barring "trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." *In re Murchison*, 349 U.S. at 136. Yet, "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954). And the procedure in question was seriously deficient in this regard.

---

[3]The ruling here is consistent with our general admonition that "A Judge Should Avoid Impropriety and the Appearance of Impropriety in all his Activities," Code of Judicial Conduct, Canon 2, and our expectation that he will "disqualify himself in a proceeding in which his impartiality might reasonably be questioned[.]" Code of Judicial Conduct, Canon 3 C.(1).

But a judge owes a duty not to withdraw from a case—howevermuch his personal feelings may incline him to do so—where the circumstances do not *fairly* give rise to an appearance of impropriety and do not *reasonably* cast suspicion on his impartiality.

The judgment of the district court is reversed, and the case is remanded for entry of a judgment of acquittal.

*Dan S. Ikehara* (*Anson O. Rego*, A Law Corporation, of counsel) for appellant.

*G. Cher Foerster*, Deputy Prosecuting Attorney, for appellee.