53 P.3d 1198

STATE of Hawai'i, Plaintiff–Appellee,

v.

Simon BEBB, Defendant–Appellant.

No. 23036.

Intermediate Court of Appeals of Hawai'i.

Aug. 22, 2001.

As Amended Aug. 29, 2001.

Certiorari Denied Sept. 20, 2002.

Mal Gillin, on the briefs, for Defendant–Appellant.

Caroline M. Mee, Deputy Prosecuting Attorney, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., WATANABE and FOLEY, JJ.

Opinion of the court by BURNS, C.J.

Defendant–Appellant Simon Bebb (Defendant) appeals his conviction and sentence from the Judgment of the District Court of the First Circuit, State of Hawai‘i, entered on December 10, 1999, by District Court Judge Colette Garibaldi. Defendant was convicted of driving under the influence of intoxicating liquor (DUI), Hawai‘i Revised Statutes (HRS) § 291–4(a)(1) (Supp.1999), and sentenced to:

1. Pay a fine of $150;
2. Pay an assessment of $107 for driver education;
3. Attend a minimum of 14 hours at an alcohol abuse education and counseling program for alcohol assessment and treatment, if recommended;
4. A license suspension of 90 days (the first 30 days to be absolute, the next 60 days to be restricted for driving to and from work and for alcoholism treatment); and
5. Surrender his driver's license.

Defendant was also convicted of disregarding a red signal, HRS § 291C–32(a)(3)(A) (1993), and failure to yield a right of way to a pedestrian in a crosswalk, HRS § 291C–72 (1993).

Defendant challenges only the DUI conviction. We vacate the DUI conviction and remand the DUI charge for a new trial.

## RELEVANT STATUTES AND PRECEDENT

HRS § 291–4(a)(1) (Supp.1999) prohibits the operation of a vehicle by a person who is "under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty[.]"

HRS § 291–4(a)(2) (Supp.1999) prohibits the operation of a vehicle by a person with ".08 or more grams of alcohol per two hundred ten liters of breath."

HRS § 291–4(a)(1) (Supp.1999) "provides that a person commits the offense of driving under the influence of intoxicating liquor if the person's conduct falls into one of two categories: (1) driving while under the influence or (2) driving with a blood alcohol content of 0.10 or more." *State v. Grindles,* 70 Haw. 528, 531, 777 P.2d 1187, 1189 (1989) (emphases in the original).

## BACKGROUND

During the trial, pursuant to *State v. Wilson,* 92 Hawai‘i 45, 987 P.2d 268 (1999),[1] Judge Garibaldi granted Defendant's motion to suppress evidence of Defendant's breath alcohol content (BAC) measured by the Intoxilyzer of Plaintiff–Appellee State of Hawai‘i (the State), and the State agreed to dismiss the HRS § 291–4(a)(2) charge.

Only Honolulu Police Department (HPD) Officers Brent Kagawa (Officer Kagawa) and Brian Rego (Officer Rego) testified at trial.

Officer Kagawa testified that during the nine o'clock p.m. hour on Friday, June 11, 1999, he observed Defendant operate his vehicle through a red light in the easterly direction on Kuhio Avenue, in Waikiki, thereby causing a pedestrian, who was crossing Kuhio Avenue in the crosswalk with the green light, to jump back. Officer Kagawa stopped Defendant.

Officer Rego testified that he administered to Defendant the following field sobriety tests (FSTs): the one-leg stand, the walk-and-turn, and the Horizontal Gaze Nystagmus (HGN). Officer Rego opined that Defendant had failed each of the three FSTs.

Officer Rego stated that he had approximately 24 hours of training at the Honolulu Police Academy in approximately November of 1996 and was then certified to perform the three FSTs.

---

1. "[W]e therefore hold that, because the information conveyed to Wilson regarding his rights under [Hawai‘i Revised Statutes (HRS)] chapter 286 was inaccurate and misleading, Wilson was precluded from knowingly and intelligently consenting to the blood alcohol test in violation of HRS chapter 286." *State v. Wilson,* 92 Hawai‘i 45, 54, 987 P.2d 268, 277 (1999).

## DISCUSSION

### A.

Defendant contends that the trial court reversibly erred on December 10, 1999, when it denied his December 7, 1999 Motion for Reconsideration of Finding of Guilty or in the Alternative for New Trial. In that motion, Defendant argued that the trial court's knowledge of the following facts required the court to recuse itself: the State had charged Defendant with violating HRS § 291–4(a)(2), the basis of the charge was the result of an Intoxilyzer test, and the charge was dismissed when the evidence of the Intoxilyzer test was suppressed.

There is no evidence that the trial court knew the exact result of the Intoxilyzer test. Defendant assumes that the trial court deduced from the fact of the State's charge that the result of the Intoxilyzer test was sufficient to sustain a charge under HRS § 291–4(a)(2).

In his opening brief, Defendant states that [i]f the alleged bias falls outside the provisions of HRS § 601–7, the court may then turn, if appropriate, to the notions of due process described in [*State v. Brown,* 70 Haw. 459, 776 P.2d 1182 (1989)], in conducting the broader inquiry of whether "circumstances fairly give rise to an appearance of impropriety and ... reasonably cast suspicion on [the judge's] impartiality." *State v. Ross,* 89 Hawai'i 371, 377, 974 P.2d 11, 17 (Haw.1998) (quoting *Brown,* 70 Haw. at 467 n. 3, 776 P.2d at 1188 n. 3).

Here, Defendant does not claim that Judge Garibaldi's conflict falls under [HRS] section 601–7, therefore, analysis of that statute is not required. Rather, Judge Garibaldi's conflict arises out of the fact that she knew the results of the inadmissible results of Defendant's breath alcohol test. Because this information was highly prejudicial to Defendant, and because this trial was a bench trial, Judge

Garibaldi should have *sua sponte* recused herself once she suppressed those test results.

(Footnote omitted.)

 For the following three reasons, we disagree with Defendant. First is the rule of law that "a judge is presumed not to be influenced by incompetent evidence." *State v. Vliet,* 91 Hawai'i 288, 298, 983 P.2d 189, 199 (1999).

Second is the Hawai'i Supreme Court's statement that

[a]llowing the use of the [I]ntoxilyzer test result for both charges does not give the Prosecution "two bites of the apple." In an [HRS 291–4(a)(2)] charge, the [I]ntoxilyzer test result alone can prove commission of a crime, *i.e.,* driving with a BAC equal to or greater than [0.8] percent.

However, under an [HRS 291–4(a)(1)] charge, the [I]ntoxilyzer test result is simply competent evidence, which the trier of fact may consider in the context of other evidence. Because the prosecutor would have to present other evidence to establish the [HRS 291–4(a)(1)] charge, the Prosecution is not given "two bites of the same apple."

For example, in an [HRS 291–4(a)(2)] charge, once the [I]ntoxilyzer test result— a BAC equal to or greater than 0.10 percent has been admitted into evidence, and, assuming the BAC is believed to be true by the trier of fact, then the prosecutor has adduced sufficient evidence to establish that the defendant has violated the *per se* offense under [HRS 291–4(a)(2)]. This, however, is not sufficient to establish an [HRS 291–4(A)(1)] violation. In an [HRS 291–4(a)(1)] charge, the Prosecution must also establish that the defendant was DUI, *e.g.* he was weaving or failed the field sobriety test.[2]

*State v. Mezurashi,* 77 Hawai'i 94, 98, 881 P.2d 1240, 1244 (1994)(footnote added). Therefore, evidence of a percentage of breath alcohol sufficient to support a charge under

---

**2.** This statement should not be read as saying any more than that a combination of (1) a blood alcohol content in excess of the statutory limit under HRS § 291–4(a)(2) (Supp.1999) and (2) "weaving or [failing] the field sobriety test" is sufficient evidence to support a HRS § 291–4(a)(1) (Supp.1999) conviction. It does not say that "weaving or [failing] the field sobriety test" is sufficient evidence to support a HRS § 291–4(a)(1) conviction.

HRS § 291–4(a)(2) is insufficient, by itself, to support a charge under HRS § 291–4(a)(1).

Third, if the trial judge had recused herself, when the replacement judge subsequently assigned to try the case did his or her pre-trial preparation and read the record, he or she would have become aware that (1) the State had charged Defendant with violating HRS § 291–4(a)(2), (2) the basis of the charge was the result of an Intoxilyzer test, and (3) the charge was dismissed after the evidence of the Intoxilyzer test was suppressed.

**B.**

Officer Rego testified that Defendant failed all three FSTs. Defendant contends that the trial court reversibly erred in admitting evidence of the HGN test as evidence of intoxication because of the lack of evidence of Officer Rego's training and certification to do an HGN.

■ When the issue is probable cause of intoxication, this court has concluded that

[b]efore HGN test results can be admitted into evidence in a particular case, however, it must be shown that (1) the officer administering the test was duly qualified to conduct the test and grade the test results; and (2) the test was performed properly in the instant case.

... [I]t is not clear what HPD's "standard training" consists of and whether HPD's standard training program meets the requirements of the NHTSA [National Highway Traffic Safety Administration]. Therefore, we have no way of knowing the extent and nature of [the officer's] HGN training, whether [the officer's] training was supervised by certified instructors, whether [the officer] was certified to administer the test, and whether [the officer] received periodic retraining to refresh himself on his HGN test administration skills.[3]

*State v. Ito,* 90 Hawai'i 225, 244, 978 P.2d 191, 210 (App.1999) (footnote and citations omitted) (footnote added).

When the issue is proof of intoxication beyond a reasonable doubt, the Hawai'i Supreme Court has concluded that

Toyomura is also correct in observing that insufficient foundation was laid to permit Officer Fujihara, *based on Toyomura's performance of the FSTs,* to render a lay [1] opinion as to whether he was intoxicated, inasmuch as the prosecution elicited no testimony establishing that (1) the horizontal gaze nystagmus, "one-leg stand," and "walk-and-turn" procedures were elements of the HPD's official FST protocol, (2) there was any authoritatively established relationship between the manner of performance of these procedures and a person's degree of intoxication, and (3) Officer Fujihara had received any specific training in the administration of the procedures and the "grading" of their results. Therefore, Toyomura is correct that Officer Fujihara was improperly permitted to render an opinion that he (*i.e.* Toyomura) was intoxicated based in part on Officer Fujihara's assessment of the results of the FSTs....

Toyomura is simply wrong, however, in concluding that the "rule in [*State v.*] *Nishi* [9 Haw.App. 516, 852 P.2d 476 (1993)] was violated in this case" in such a manner as to require that his DUI conviction be vacated. As the trial court correctly noted, "any ... lay person," including a police officer, "can have an opinion regarding sobriety." As set forth above, Officer Fujihara expressly testified that, over the course of his approximately nineteen years as a police officer, he "had an opportunity to observe people who had been drinking and at different levels[.]" And, as noted, the record reflects that the trial court both assured Toyomura that he was considering Officer Fujihara's testimony "only from a lay point of view" and that the trial court

---

3. The National Highway Traffic Safety Administration (NHTSA) "DWI Detection and Standardized Field Sobriety Testing" Instructor Manual, revised in February 2000, states that "Officers trained in the NHTSA/IACP-approved SFST [Standardized Field Sobriety Testing] curricula, prior to the below revision date, remain qualified

to administer and interpret the SFSTs based on their previous training."

4. In context, it appears that this word should have been "expert" rather than "lay" because "testimony establishing" the three facts that follow would qualify Officer Fujihara as an expert.

applied its independent assessment of the evidence in finding Toyomura guilty of DUI....

. . . .

Examined in the light of the entire proceedings and given the effect the whole record shows it to be entitled, we are convinced that there is no reasonable possibility that any improper lay opinion testimony on the part of Officer Fujihara contributed to Toyomura's DUI conviction. Accordingly, we hold that any error in the admission of that testimony was harmless.

*State v. Toyomura*, 80 Hawai'i 8, 26–27, 904 P.2d 893, 911–12 (1995) (citations omitted, emphasis in the original, footnote added).

The first paragraph of the above quote says that a sufficient foundation must be laid to permit the police officer who administered the FSTs to use his "assessment of the results of the FSTs" to render an opinion as to whether the arrestee was intoxicated. The second paragraph says that any "lay person," especially a police officer with nineteen years of experience observing people who had been drinking and at different levels, can have an opinion regarding sobriety that is admissible in evidence. The third paragraph leaves open the possibility that a "lay opinion" was improperly admitted into evidence.

The State responds to Defendant's challenge to Officer Rego's qualification as an expert by stating that

Officer Rego's testimony was not offered as an expert opinion on Defendant's sobriety. As with the other FSTs, the State offered Officer Rego's testimony [regarding the HGN test] only as a lay opinion of Defendant's sobriety. As noted, the Hawai'i courts have repeatedly upheld the admission of such evidence. Therefore, Defendant has not established that the lower court erred when it admitted Officer Rego's testimony regarding the HGN.

(Citations omitted.) Thus, we are not presented with the question of whether Officer Rego was qualified as an expert. We are presented with the question of whether the court was permitted to consider Officer Rego's lay opinion of Defendant's intoxication.

■ It appears that the State misunderstands *Toyomura*. In *Toyomura*, the Hawai'i Supreme Court concluded that a police officer, based on his or her "lay" observations, can have a "lay" opinion that an arrestee is not sober. It also says, however, that a police officer cannot base his or her "lay" opinion that an arrestee is not sober on his or her "assessment of the results of the FSTs." *Id.* at 26, 904 P.2d at 911. In Defendant's case, the trial court did not enforce this prohibition.

We distinguish "the results of the FSTs" from the arrestee's physical actions or inactions while taking the FSTs. In *Toyomura*, "the trial court both assured Toyomura that [it] was considering [the police officer's] testimony 'only from a lay point of view' and that the trial court applied its independent assessment of the evidence in finding Toyomura guilty of DUI." *Id.* at 27, 904 P.2d at 912. In Defendant's case, the trial court gave no such assurance.

The State responds that

[t]he Hawai'i courts have held that the improper admission of a police officer's opinion regarding sobriety is harmless where the trial court based its determination of guilt on evidence of the defendant's impaired condition, not the officer's analysis. The lower court's ruling indicates that it relied not upon Officer Rego's opinion that Defendant was intoxicated but upon the various indicia, including Defendant's performance on the various FSTs, in finding that Defendant was DUI. Thus, any error in allowing Officer Rego to testify regarding the FSTs was harmless beyond a reasonable doubt.

(Citations omitted.)

The State misrepresents the record. In addition to relying upon "Defendant's performance on the various FSTs[,]" the court expressly also relied upon Officer Rego's "assessment of the results of the FSTs." In its decision, the court stated, in relevant part, as follows:

THE COURT: Okay, thank you.

. . . .

With respect to the standard field sobriety test that was administered by Officer

Rego, he did testify as to his training and to administer these tests as well as the HGN. He explained what the tests consisted of, what he was looking [for], and how it was graded as to the clues that were being determined.

With respect to the HGN, out of six possible maximum clues, he's looking for four and observed five clues.

With respect to the walk and turn, of a possible maximum eight with two being the minimum being required for failure, the officer testified that he observed ten. He went through four of them. The turn was adequate, that [Defendant] raised his arms, that he was not able to keep his balance in the instruction phase, and that he missed the heel to toe.

Although, as [Defense Counsel] has indicated, it's not clear the amount of the miss so it is very close.

With respect to the one leg stand, of a maximum of four clues which would mean a failure, three were observed. [Defendant] was observed swaying once and he raised his arms for two periods of time.

And for that reason I am finding [Defendant] guilty of the violation.

We further conclude that the record in Defendant's case, in contrast to the record in *State v. Mitchell,* 94 Hawai'i 388, 15 P.3d 314 (2000), does not permit us to conclude that the admission into evidence, the court's consideration of the results of the FSTs, and the court's consideration of Officer Rego's assessment of the results of the FSTs was harmless error. In *Mitchell,* there was overwhelming evidence that the defendant was indeed DUI. That is not so in Defendant's case.

### C.

Defendant contends that a reversal rather than a remand is appropriate because after disregarding the inadmissible evidence of the FSTs, the record lacks substantial evidence to support a finding that Defendant is guilty of DUI.

■ The State responds that the FSTs, other than the HGN test, showed that Defendant's "mental and motor skills were im-

paired. The smell of alcohol showed that Defendant's impairment was due to the influence of alcohol." Alternatively, the State argues that

> Defendant drove through a red light, jeopardizing a pedestrian in the process. Defendant's testimony that he saw and honked at the pedestrian merely affirms that his ability to guard against casualty was impaired. Moreover, Defendant's conduct while interacting with the officers showed that he was unable to comply with instructions. Again, such evidence established that Defendant's mental faculties were impaired. Further, aside from the FSTs, Officer Kagawa observed that Defendant was unsteady on his feet and his speech was thick and slow. Such evidence established that Defendant's motor skills were similarly impaired. The smell of alcohol combined with Defendant's bloodshot watery eyes was sufficient to show that Defendant's impairment was due to alcohol. Thus, even without the FSTs, Defendant's conviction was supported by substantial evidence.

■ Defendant's position is that, if the substantial evidence supporting a determination of guilt includes inadmissible evidence and, when the inadmissible evidence is omitted, substantial evidence is lacking, Defendant's "conviction should be reversed" rather than vacated and remanded for a new trial. We disagree. Defendant cannot do better than if he had timely filed a motion for judgment of acquittal and the rule applicable to such a motion is as follows:

> The traditional justification for considering inadmissible as well as admissible evidence in reviewing acquittal motions has been that the government may have foregone other available evidence in reliance upon obviously stronger evidence admitted by the trial judge and only revealed as inadmissible on appeal. See, e.g., Comment, 31 U.Chi.L.Rev. 365 (1964).

2A Wright, Federal Practice and Procedure: Criminal 3d § 470, n. 19 (2000). As noted in *State v. Hamala,* 73 Haw. 289, 293, 834 P.2d 275, 277 (1992), and *State v. Wallace,* 80

Hawai'i 382, 413–14, 910 P.2d 695, 726–27 (1996),

> [R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.*, incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt [or innocence] free from error, just as society maintains a valid concern for insuring that the guilty are punished.

*Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

## CONCLUSION

Accordingly, we affirm that part of the December 10, 1999 Judgment convicting Defendant of disregarding a red signal, HRS § 291C–32(a)(3)(A) (1993), and failure to yield a right of way, HRS § 291C–72 (1993).

We vacate that part of the December 10, 1999 Judgment convicting Defendant of driving under the influence of intoxicating liquor, HRS § 291–4(a)(1) (Supp.1999). We remand the DUI charge for a new trial consistent with this opinion.

In light of *Toyomura* (and *Ito, supra,* and *Mitchell, supra* ), we agree with Defendant that the State did not establish the proper foundation for admission of Officer Rego's testimony as to his assessment of the results of the FSTs, including the HGN test.