*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

Electronically Filed
Supreme Court
SCWC-22-0000536
05-JUN-2025
09:25 AM
Dkt. 23 OP

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

WAISER WALTER,
Petitioner/Defendant-Appellant.

SCWC-22-0000536

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-22-0000536; CASE NO. 1PC161001629)

June 5, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, GINOZA, AND DEVENS, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.    INTRODUCTION

This appeal arises from an incident in which

Petitioner Waiser Walter stabbed his adoptive sister, Imaculata

Roke, and his four-year-old nephew, J.R.  Roke was taken to the

hospital in critical condition and was eventually released.

J.R. died as a result of his stab wounds.  After entering guilty

pleas pursuant to a plea agreement, the Circuit Court of the First Circuit (circuit court) convicted Walter of murder in the second degree and attempted murder in the second degree. He was sentenced to life imprisonment with the possibility of parole. The Intermediate Court of Appeals (ICA) affirmed Walter's conviction.

Walter asks this court to vacate his conviction, arguing (1) the circuit court failed to engage him in a colloquy to ascertain the basis for his request for new court-appointed counsel, (2) the relationship between the circuit court and one of the State's witnesses, his former deputy public defender, gave rise to an appearance of impropriety, (3) his public defenders provided ineffective assistance of counsel, and (4) the circuit court erred in denying his motion to withdraw his guilty plea.

As set forth below, we hold that "fair and just reason[s]" warranted withdrawal of Walter's guilty plea. The circumstances underlying Walter's change of plea – particularly Walter's consistent assertion that he lacked penal responsibility and the lack of a colloquy to determine the basis for his request for new counsel – weigh in favor of plea withdrawal.

However, we reject Walter's suggestion that there was an apperance of impropriety raised by the circuit court's relationship with one of the State's witnesses.

Accordingly, we (1) vacate the ICA's June 21, 2024 Judgment on Appeal, (2) vacate the circuit court's August 10, 2022 Judgment of Conviction and Sentence, and (3) remand to the circuit court for further proceedings.

## II.  BACKGROUND

### A.    Circuit Court Proceedings

Three days after the October 10, 2016 incident, on October 13, 2016, Walter was indicted on three counts: (1) attempted murder in the first degree, (2) murder in the second degree, and (3) attempted murder in the second degree.  Deputy Public Defender Crystal K. Glendon (DPD Glendon) was appointed to represent Walter.  From the outset of the case, Walter maintained he was guided by demons or God and pursued the affirmative defense of mental or physical disease, disorder or defect excluding criminal responsibility under Hawai'i Revised Statutes (HRS) chapter 704 (2014).[1]  Walter has remained in custody since October 14, 2016.

---

[1]      Pursuant to HRS § 704-400(1) (2014):

A person is not responsible, under [the Hawai'i Penal] Code, for conduct if at the time of the conduct as a result of physical or mental disease, disorder, or defect the person lacks substantial capacity either to appreciate the

(. . . continued)

3

### 1.    Medical examiners' penal responsibility findings

After Walter's September 11, 2017 motion for a mental evaluation was granted on October 16, 2017, Walter was examined by a court-appointed panel of three medical examiners. The panel was generally favorable to Walter's lack of penal responsibility defense. Two of the three examiners submitted mixed findings, but ultimately concluded that Walter lacked penal responsibility. The third examiner was unable to reach a conclusion.

Initially mistaking the victim J.R.'s toxicology report for Walter's, Dr. Alex Lichton, Ph.D. noted the presence of beta phenethylamine indicated Walter's voluntary intoxication. In an addendum, however, Dr. Lichton corrected the factual error and concluded that Walter was not penally responsible because absent beta phenethylamine, Walter's "use of alcohol, antihistamines and marijuana [was] not sufficient to account for Mr. Walter's psychotic symptoms at the time of the alleged offenses."

After reviewing Walter's toxicology report that found no amphetamine in Walter's bloodstream, Dr. Martin Blinder, M.D.

(continued . . .)
        wrongfulness of the person's conduct or to conform the
        person's conduct to the requirements of the law.

concluded Walter was suffering from an amphetamine induced psychosis from prior use when the incident occurred and thus lacked penal responsibility.  The third medical examiner, Dr. John Compton, Ph.D., was unable to offer a definite conclusion as to Walter's penal responsibility.

After the court-appointed examiners submitted their reports, the State sought to retain two additional medical examiners, Dr. Sharon Tisza, M.D., and Dr. Leonard Jacobs, M.D., to assess Walter's penal responsibility.  At a July 24, 2018 hearing, the State orally moved to allow Drs. Tisza and Jacobs to examine Walter and inspect the same materials the court-appointed panel reviewed.  The circuit court asked DPD Glendon if she had any objection, to which DPD Glendon stated a "record objection" to Dr. Tisza for "the delays it would cause" to the proceedings.

With only a "record objection," the circuit court[2] granted the State's motions and allowed Drs. Tisza and Jacobs to examine Walter and review pertinent records.  Both examiners concluded Walter was penally responsible.  Dr. Jacobs's report noted that Walter was "intoxicated on alcohol, cannabis, and

---

[2]     The Honorable Rom A. Trader presided over the case until December 2018.  The Honorable Catherine H. Remigio presided over this case beginning January 2019.

5

dextromethorphan [an active ingredient in cough syrup]" according to his Oʻahu Community Correctional Center (OCCC) records. Dr. Jacobs pointed to Walter's admission that he "used Coricidin [an over-the-counter cough and cold syrup] with cough suppressant (dextromethorphan) not prescribed for him" and that he was "drunk" when the incident occurred. Dr. Tisza likewise concluded, "[b]ut for voluntary intoxication of multiple substances (Coricidin, Cannabis and Alcohol) on the day of the offenses Mr. Walter would have been able to appreciate the wrongfulness of his conduct (cognitive capacity) and to conform his conduct to the requirements of the law (volitional capacity)."

    2.  **Motion to withdraw as counsel**

        Despite multiple continuances and defense counsel's efforts to retain a sixth medical examiner, no additional medical examiner was hired. In early June 2019, Deputy Public Defender Earl Edward Aquino (DPD Aquino) was assigned Walter's case after DPD Glendon left the Office of the Public Defender. Walter grew frustrated with his counsel and asked that DPD Aquino file a motion to withdraw. At the October 22, 2019 hearing on the motion to withdraw, another deputy public defender appeared for DPD Aquino, who was not present. The

circuit court did not question Walter about why he requested his court-appointed counsel withdraw.  Instead, the circuit court orally denied the DPD's motion, stating Walter "does not have a right to an attorney he likes."

3.    **Change of plea**

On the same day the circuit court denied DPD Aquino's motion to withdraw, the State offered a plea deal to Walter. The State offered to nolle prosequi count 1, attempted murder in the first degree, in exchange for Walter's guilty plea on counts 2 and 3, murder in the second degree and attempted murder in the second degree.  The plea offer also required the defense and State to jointly recommend to the Hawai‘i Paroling Authority that Walter serve a mandatory minimum of 35 years, but the State agreed that it would not seek extended or consecutive term sentencing.

Walter later testified that he felt "hopeless" and "angry" he was stuck with an attorney that, from Walter's point of view, gave him the option of either taking his chances at trial and likely losing or accepting a plea deal offered by the State for mandatory 35 years in prison before the possibility of parole.  Walter decided to take the deal and change his plea.

On February 3, 2020, the parties presented the plea agreement to the circuit court where Walter pleaded guilty to counts 2 and 3, murder in the second degree and attempted murder in the second degree.  The circuit court asked Walter questions about his background, English language proficiency, reading and writing comprehension, his review of the plea agreement with DPD Aquino, his understanding of the penalties associated with each charged offense, his current state of mind, and the constitutional rights he was waiving by changing his plea. During the plea change colloquy, the circuit court and Walter had the following exchange:

> Q. [Circuit Court]:    You know that once I sentence you, you cannot change your mind and ask for a trial, it will be too late by then; correct?
>
> A. [Walter]:    Yes.
>
> Q.    Now, we've gone over the plea agreement, do you have any questions about the plea agreement?
>
> A.    Mm, no, Your Honor.
>
> Q.    And you believe that you understand everything that's in the plea agreement?
>
> A.    Yes, Your Honor.
>
> Q.    Page 2 of the change of plea form, No. 7 says: I plead guilty because after discussing all of the evidence and receiving advice on the law from my lawyer, I believe that I am guilty.
> Is that a true statement?
>
> A.    Yes, Your Honor.
>
> Q.    And could you tell me why you believe you're guilty.
>
> A.    Because I know that I did it.
>
> . . . .

Q.     But is anyone pressuring you or making promises or threatening you to get you to plead in this case?

A.     No, Your Honor.

Q.     Whose decision is it to plead in this case?

A.     Mine.

Q.     And are you comfortable with that decision, as comfortable as you could be given the gravity of the situation?

A.     Yes, Your Honor.

Q.     Have you weighed all of your options?

A.     Yes, Your Honor.

Q.     And do you believe that this is in your best interest?

A.     Yes, Your Honor.

. . . .

Q.     And did you and Mr. Aquino discuss strategy, such as what your defenses might have been if you wanted to fight these charges and go to trial?

A.     Yes, Your Honor.

Q.     And did Mr. Aquino give you some legal advice?

A.     Yes.

Q.     And, in fact, he secured this plea agreement for you?

A.     Yes, Your Honor.

Q.     Are you satisfied with the help he's given to you?

A.     Yes, Your Honor.

The circuit court found that Walter "voluntarily and intelligently entered his plea with a full understanding of the nature of the charges against him, as

well as the possible consequences."  Sentencing was scheduled for April 13, 2020 with instructions for the Adult Client Services Branch to conduct a pre-sentence investigation and report.

4.    **Pre-sentencing motion to withdraw guilty plea**

Three days after changing his plea, Walter retained counsel Keith S. Shigetomi (new counsel).  In the following months, the COVID-19 lockdown unfolded.  Four months after entering the guilty plea, Walter's new counsel indicated Walter's intent to withdraw his guilty plea and sought to continue sentencing to retain a medical examiner to assess whether Walter knowingly entered his guilty plea.

A week later, on June 25, 2020, Walter filed a motion to withdraw his guilty plea.  Over the course of six months, the circuit court reviewed multiple memoranda in support and in opposition to Walter's motion to withdraw his guilty plea and heard hours of testimony from Walter, his former counsel DPDs Glendon and Aquino, and a criminal defense expert.[3]

The motion asserted DPD Glendon and Aquino's ineffective assistance of counsel was a "fair and just reason"

---

[3]    The circuit court held six hearings on Walter's motion to withdraw guilty plea.  The hearings took place on July 15, 2020, July 30, 2020, July 31, 2020, October 15, 2020, December 10, 2020, and September 15, 2021.

for the guilty plea withdrawal because it "caused [Walter] to believe that he had no choice or alternative but to plea[d] guilty, thus rendering his guilty plea not intelligently, knowingly and voluntarily entered."  In particular, the motion highlighted (1) DPD Glendon's failure to lodge more than a "record objection" to the State's two additional medical examiners, and (2) DPDs Glendon and Aquino's failure to retain a defense mental examiner demonstrated "a lack of skill, judgment or diligence" that caused Walter to lose confidence in his counsel.

The circuit court denied the motion on January 26, 2022.  Applying the multi-factor framework outlined in State v. Pedro, 149 Hawai'i 256, 275, 488 P.3d 1235, 1254 (2021), the circuit court found no "fair and just reason" warranted pre-sentencing plea withdrawal.  As to Walter's assertion of innocence, the circuit court recounted its plea change colloquy and noted that when Walter pleaded guilty, he "understood that he was giving up his insanity defense [and] believed doing so by pleading guilty was in his best interest."  As to the second factor, the timing between Walter's change of plea and withdrawal motion, the circuit court noted that for four months,

Walter's new counsel did not obtain a medical expert or further explain why it sought to continue sentencing.

Considering the third factor, circumstances underlying the plea change, the circuit court emphasized that Walter had discussed his case with both DPDs Glendon and Aquino and received more than three years of legal representation before entering the change of plea. The circuit court also considered the "gravamen of [Walter]'s plea agreement," and observed that the "most obvious consequence of a plea withdrawal is that [Walter] would face the possibility of life without parole if he were convicted of Count 1, or Counts 2 and/or 3 and sentenced to an extended term."

Fourth, turning to Walter's background, the circuit court found Walter "had no problems reading and writing English[,]" "did not need an interpreter[,]" and "spoke to his attorneys in English and without an interpreter." Fifth, the circuit court also found the State would suffer potential prejudice due to the passage of time since the incident (5 years at the time of the circuit court's order), the retirement of eight police witnesses, and the relocation of the former medical examiner investigator to the mainland should Walter's plea withdrawal be granted.

In sum, the circuit court concluded Walter had not established a fair and just reason to withdraw his guilty pleas.

### 5. Motion to disqualify judge

During the October 15, 2020 hearing on Walter's plea withdrawal, the court disclosed that about six years prior, she asked one of the State's witnesses - Walter's former counsel, DPD Glendon – to organize a baby shower for a mutual friend. At the time, "[e]vent planning was a fun hobby" for DPD Glendon, who was given $100 by the circuit court judge to cover costs but was not otherwise paid for her services. DPD Glendon and the circuit court judge also both attended two birthday parties, one in 2012 and the other in 2017, but did not otherwise socialize with each other.

Walter moved to disqualify the circuit court judge, arguing her prior relationship with DPD Glendon caused the court to favor the State and gave rise to an "appearance of impropriety." The circuit court denied the motion to disqualify, explaining:

> [T]here was no financial gain. There was no socializing at that party. It was six years ago. And it was basically a favor to the mutual friend and to make sure that – that party was done correctly.
> And so when I look at the entire record, including the credibility of Ms. Glendon, and I look at the requirements that – that are left, which is the appearance of impropriety, I do not find that it fairly, the circumstances, fairly give rise to an appearance of impropriety or cast reasonable suspicion on my impartiality. And so the motion is denied.

### 6. Conviction and sentence

On August 10, 2022, pursuant to the February 3, 2020 plea agreement, the circuit court found Walter guilty of murder

13

in the second degree and attempted murder in the second degree. Walter was sentenced to life with the possibility of parole with a mandatory minimum sentence of 15 years. Pursuant to the plea agreement, the State and defense jointly agreed to recommend to the Hawai'i Paroling Authority that Walter serve a minimum sentence of 35 years. The State did not seek extended or consecutive term sentencing.

**B.    ICA Summary Disposition Order**

In his appeal to the ICA, Walter argued that the circuit court erred in denying (1) his motion to withdraw guilty plea, (2) DPD Aquino's motion to withdraw, and (3) his motion to disqualify judge. The ICA disagreed and affirmed Walter's conviction in a Summary Disposition Order.

The ICA held that the circuit court did not abuse its discretion when it denied Walter's pre-sentence motion to withdraw guilty plea. Applying the Pedro multi-factor framework, the ICA concluded that four of the five factors weighed against plea withdrawal. The ICA explained that the first factor, the defendant's assertion of innocence, weighed against plea withdrawal because Walter "never denied committing the acts alleged in the indictment." The ICA noted that the second factor, the time between the guilty plea and withdrawal motion, constituted an undue delay because during the four-month period between Walter's guilty plea and plea withdrawal,

14

Walter's new counsel failed to produce a medical examiner within the time frame given by the circuit court and instead filed a motion to withdraw Walter's guilty plea. Third, weighing the circumstances underlying the plea, the ICA noted that Walter accepted the State's plea offer after considerable deliberation with his counsel. Fourth, considering Walter's background, the ICA concluded Walter's English language proficiency weighed against withdrawing Walter's guilty plea. Finally, the ICA concluded that there was no prejudice against the State – marking only one of the five Pedro factors in favor of Walter's plea withdrawal.

As to the denial of the motion to withdraw as counsel, the ICA agreed with the circuit court that Walter did not "have a right to an attorney that he likes," but only a "right to an attorney that is capable and competent," of which DPD Aquino was both. In response to Walter's claim that the circuit court failed to engage in a meaningful colloquy when it heard the motion to withdraw, the ICA noted that engaging in a colloquy with a criminal defendant seeking new counsel "'is not an end unto itself' but 'merely a means to an end . . . to protect the defendant's right to effective representation of counsel[.]'" (Quoting State v. Kossman, 101 Hawai'i 112, 119, 63 P.3d 420, 427 (App. 2003)). It pointed out that although Walter "much later" argued his former counsel was ineffective, he told the circuit

15

court during his change of plea hearing that he was satisfied with the help he received from DPD Aquino. The ICA concluded that under these circumstances, there was no abuse of discretion.

The ICA also held the circuit court did not abuse its discretion when it denied Walter's motion to disqualify the circuit court judge. It concluded that a disclosed past relationship between the judge and State's witness "would not cause 'an objective, disinterested observer . . . [to] entertain significant doubt that justice would be done absent recusal[.]'" (Quoting Kondaur Cap. Corp. v. Matsuyoshi, 150 Hawai'i 1, 11-12, 496 P.3d 479, 489-90 (App. 2021)). Walter timely filed his application for writ of certiorari.

### III. STANDARDS OF REVIEW

### A. Pre-Sentencing Plea Withdrawal

We review a trial court's denial of a Hawai'i Rules of Penal Procedure (HRPP) Rule 32(d) motion to withdraw a plea made prior to sentencing for abuse of discretion. State v. Garcia, 135 Hawai'i 361, 368, 351 P.3d 588, 595 (2015).

> [W]here the motion [to withdraw guilty plea] is presented to the trial court before the imposition of sentence, a more liberal approach is to be taken, and the motion should be granted if the defendant has presented a fair and just reason for his request and the State has not relied upon the guilty plea to its substantial prejudice.

State v. Jim, 58 Haw. 574, 576, 574 P.2d 521, 522-23 (1978).

16

B.    Substitution of Counsel

We review a lower court's denial of a motion to substitute court-appointed counsel for abuse of discretion. Kossman, 101 Hawai'i at 119, 63 P.3d at 427; see State v. Harter, 134 Hawai'i 308, 328, 340 P.3d 440, 460 (2014).  "[T]he trial court's decision will not be overturned on appeal unless 'there was an abuse of discretion that prejudiced the defendant by amounting to an unconstitutional denial of the right to effective assistance of counsel.'"  Kossman, 101 Hawai'i at 119, 63 P.3d at 427 (quoting State v. Torres, 54 Haw. 502, 505, 510 P.2d 494, 496 (1973)) (emphasis omitted).

C.    Motion for Disqualification

A lower court's denial of a litigant's motion to disqualify the judge is reviewed for abuse of discretion. Arquette v. State, 128 Hawai'i 423, 447, 290 P.3d 493, 517 (2012).  "Decisions on recusal or disqualification present perhaps the ultimate test of judicial discretion and should thus lie undisturbed absent a showing of abuse of that discretion." State v. Ross, 89 Hawai'i 371, 375, 974 P.2d 11, 15 (1998).

## IV. DISCUSSION

**A.   Fair and Just Reasons Warranted Walter's Pre-Sentencing Guilty Plea Withdrawal**

We first consider whether the circuit court erred when it denied Walter's motion to withdraw his guilty plea.  We conclude it did.

Criminal defendants do not have an absolute right to withdraw a guilty plea.  Jim, 58 Haw. at 575, 574 P.2d at 522.  "But where the motion [to withdraw guilty plea] is presented to the trial court before the imposition of sentence, a more liberal approach is to be taken, and the motion should be granted if the defendant has presented a fair and just reason for his request[.]"  Id. at 576, 574 P.2d at 522-23.  In Pedro we introduced a multi-factor framework to guide courts' analysis in determining whether "fair and just reason[s]" justify pre-sentence plea withdrawal:

> Courts evaluating an HRPP Rule 32(d) motion to withdraw a knowing and voluntary plea before sentencing should consider: (1) whether the defendant has asserted and maintained innocence; (2) the timing of the request for the plea withdrawal and the reasons for any delay; (3) the circumstances underlying the plea; (4) the defendant's nature and background; and (5) the potential prejudice to the prosecution caused by reliance on the plea.

149 Hawai'i at 275, 488 P.3d at 1254.

The multi-factor framework requires courts to "examine[] the totality of the circumstances to determine whether there was any fair and just reason justifying [the defendant]'s plea withdrawal."  Id. at 274, 488 P.3d at 1253

18

(emphasis in original).  Pedro also clarified that State v. Gomes, 79 Hawai'i 32, 897 P.2d 959 (1995), merely outlined "one set of circumstances in which a trial court must grant a pre-sentence motion for plea withdrawal," imposing "a floor, not a curb, on trial courts' discretion to grant a pre-sentence motion for plea withdrawal."  149 Hawai'i at 272-73, 488 P.3d at 1251-52 (emphasis in original).

Applying Pedro's multi-factor framework to the circumstances here, we hold there were "fair and just reason[s]" for Walter to withdraw his guilty plea.  Because Walter's plea withdrawal is warranted under the "more flexible and permissive" fair and just reason standard, we do not reach Walter's ineffective assistance of counsel claims.  In light of our holding, we similarly do not reach Walter's arguments related to DPD Aquino's motion to withdraw as counsel.

1. **Walter maintained his lack of penal responsibility**

First, we assess "whether the defendant has asserted and maintained innocence[.]"  Id. at 275, 488 P.3d at 1254. This factor is "context-dependent" and while "[c]ourts must look favorably on requests for plea withdrawal from defendants who have maintained their innocence and never admitted guilt, [] the converse is not true."  Id. at 276 n.22, 488 P.3d at 1255 n.22. Here, although Walter acknowledged he "did it" during the plea colloquy, Walter consistently maintained he was "guided by

19

demons trying to save the world" prior to his guilty plea. Against the backdrop of Walter's persistent assertion that he was not penally responsible, his acknowledgment during the plea colloquy that he "did it" does not, on its own, weigh against plea withdrawal.

Criminal defendants' fundamental right to assert lack of penal responsibility as a defense also weighs in favor of plea withdrawal in Walter's case. After the change of plea hearing, but before the circuit court denied Walter's plea withdrawal, we prospectively held in State v. Glenn, "that if the trial court receives notice that the defendant's penal responsibility is an issue in the case, the court must conduct a colloquy with a defendant to ensure that a waiver of the defense is intelligent, knowing, and voluntary." 148 Hawaiʻi 112, 129, 468 P.3d 126, 143 (2020). Having notice that penal responsibility would be an issue, the circuit court here did not conduct any colloquy specific to Walter's lack of penal responsibility defense, but rather broadly asked whether Walter discussed possible defenses with his counsel. Although Walter's change of plea colloquy predates Glenn's prospective holding, our longstanding recognition that "lack of penal responsibility is a deeply rooted concept, not only in Anglo-American law, but also in Hawaiʻi[,]" further weighs in favor of plea withdrawal. See id. at 123, 468 P.3d at 137.

20

### 2. There was no undue delay under the circumstances

Walter and the State dispute whether the four months between Walter's plea change and withdrawal motion constitute an undue delay. The State argues four months was more than enough time for defense counsel to file a motion to withdraw guilty plea if Walter indeed had a "swift change of heart." Walter, on the other hand, points to the COVID-19 pandemic and his new counsel's stalled efforts to retain a medical examiner amidst the lockdown.

We recognized in Pedro that "[t]he presence or absence of undue delay impacts a defendant's entitlement to pre-sentence plea withdrawal." 149 Hawai'i at 276, 488 P.3d at 1255. A "swift change of heart" is a "strong indication that the plea was entered in haste[,]" while an undue delay may not warrant withdrawal. See id. (quoting United States v. Barker, 514 F.2d 208, 222 (D.C. Cir. 1975)). For example, the Pedro defendant sought to withdraw his change of plea after four months. Id. at 264-65, 488 P.3d at 1243-44. We concluded there was no undue delay on the bases that the defendant was advised his plea change was "irreversible," the trial court improperly speculated about the defendant's motivations, and the defendant was unable to adequately explain to the court the reasons for any delay due to a lack of colloquy between the court and the defendant. Id. at 276, 488 P.3d at 1255.

Under the specific circumstances of this case, we similarly conclude four months was not an undue delay weighing against plea withdrawal. Walter entered his change of plea on February 3, 2020. Three days later, on February 6, 2020, new counsel appeared in his case. That same week, Walter refused to comply with the pre-sentence investigation under the advice of his new counsel. Although a plea withdrawal motion was not filed for four months, the swift appearance of new counsel, Walter's immediate refusal to cooperate with a pre-sentence investigation, and the then-unfolding COVID-19 pandemic tip in favor of Walter's guilty plea withdrawal.

### 3. The underlying circumstances weigh in favor of plea withdrawal

The lack of any meaningful colloquy between the circuit court and Walter during the hearing on DPD Aquino's motion to withdraw further weighs in favor of plea withdrawal. In Harter, we clarified the scope of a "penetrating and comprehensive examination" required when indigent defendants request appointed counsel be replaced. 134 Hawai'i at 323-31, 340 P.3d at 455-63. We held that a trial court's inquiry must be "the kind of inquiry that might ease the defendant's dissatisfaction, distrust, or concern" as well as one that "enable[s] the court to determine if there is 'good cause' to warrant substitution of counsel." Id. at 323, 340 P.3d at 455

22

(citations omitted).  We also noted that typically, "good cause" to grant a motion to withdraw and substitute counsel "exists when there is a conflict of interest on the part of defense counsel, a complete breakdown in communication between the attorney and client, or an irreconcilable difference between the attorney and client."  Id. at 323-24, 340 P.3d at 455-56 (internal quotation marks and citations omitted).

DPD Aquino's motion to withdraw simply stated that Walter "requested that [] counsel withdraw from his case and requested that the instant motion be filed."  At the hearing on the withdrawal motion, another deputy public defender appeared on behalf of DPD Aquino.  There, the circuit court and substitute deputy public defender had the following exchange:

> THE COURT:  Anything further, Ms. Lum?
>
> MS. LUM:  Your Honor, I did speak with Mr. Walter in regards to whether or not he wants to proceed on this motion.  The bottom line is, you know, Mr. Aquino took over this case from another attorney.  He hasn't ma[de] this decision frivolously.  He cannot work with Mr. Aquino.  He wants to have another attorney appointed to him.  So we would leave it at that.
>
> THE COURT:  I agree that –
>
> MS LUM:  The Court may question him if it wants.

Without further questioning the substitute deputy public defender or asking Walter about why he requested new counsel, the circuit court orally denied the motion, explaining:

> I agree [with the State] that the motion is insufficient.  Simply not wanting to work with the attorney that's assigned to you, who is actually from the same office as Ms. Glendon, who was his previous attorney, is

23

insufficient.  Mr. Walter does not have a right to an attorney that he likes.  He has a right to an attorney that is capable and competent, and Mr. Aquino is both.  So the motion is denied without prejudice.

Under these circumstances, the circuit court could neither "ascertain the bases for [Walter]'s request," nor ascertain whether a conflict of interest, breakdown in communication, or irreconcilable difference existed without asking Walter about the "status and quality of [his] attorney-client relationship."  See id. at 323, 329, 340 P.3d at 455, 461 (quotation marks and citations omitted).  Had the circuit court engaged in the required colloquy, it presumably would have learned Walter "didn't have confidence" in his counsel because his public defenders never retained a medical expert.

Walter felt "angry" that his counsel did not hire a medical examiner and that he was "stuck with this attorney who kept telling me that if we go to court we're going to lose." With no colloquy, Walter's "dissatisfaction, distrust, or concern" was not put at ease.  See id. at 323, 340 P.3d at 455 (noting the colloquy "must be the kind of inquiry that might ease the defendant's dissatisfaction, distrust, or concern") (quotation marks and citations omitted).  Instead, feeling like his only options were to go to trial and lose or "take[] a deal for 35 years," Walter decided to take the deal.  Under these circumstances, the lack of any Harter colloquy weighs in favor of plea withdrawal.

24

4. **Walter's background is the only factor that weighs against plea withdrawal**

A criminal defendant's age, mental faculties, education, and English-language proficiency are pertinent considerations that may impact a defendant's ability to "thoughtfully consider a plea's implications." Pedro, 149 Hawai'i at 280, 488 P.3d at 1259. Walter was 29 years old when he changed his plea to guilty. Although English was not his first language, he moved to O'ahu from Chuuk at 13 years old and attended school instructed in English through the 11th grade. The record contains numerous examples where Walter expressed a preference for communicating in English. Although a Chuukese interpreter was present at court proceedings early on in the case, Walter repeatedly told the court, his counsel, and medical examiners that he did not need an interpreter. This is the sole factor that weighs against Walter's plea withdrawal.

5. **The withdrawal of Walter's plea would not prejudice the prosecution**

Finally, in evaluating whether there is a "fair and just reason" for plea withdrawal, courts should also "weigh any prejudice to the prosecution caused by reliance on the defendant's plea." State v. Sanney, 141 Hawai'i 14, 22, 404 P.3d 280, 288 (2017) (quoting citation omitted). However, even when the prosecution is substantially prejudiced, other factors

25

favoring withdrawal may outweigh prejudice against the State.
Pedro, 149 Hawai'i at 281, 488 P.3d at 1260.

The State argues it is "potential[ly] prejudice[d]"
because its case "has weakened given the retirement of eight
police witnesses and the relocation of a former medical examiner
investigator."  This argument is unavailing because it is
speculative.  "The mere fact that the passage of time might make
it even more difficult for the prosecution to locate" a witness
does not mean a plea withdrawal would substantially prejudice
the State.  Id. (quoting Gomes, 79 Hawai'i at 40, 897 P.2d at
967) (internal quotation marks omitted).  Moreover, the relevant
period to evaluate prejudice against the State is the time
between the guilty plea and motion to withdraw the guilty plea,
not the time between the underlying incident and the plea
withdrawal motion.  It is unlikely that the now unavailable
witnesses all retired or relocated in the four-month period
between Walter's guilty plea and motion to withdraw, thereby
causing additional prejudice to the prosecution.  Thus, the
record does not show that any potential prejudice to the
prosecution to locate and call out-of-state or retired witnesses
is sufficient to weigh against plea withdrawal.

With four of the five Pedro factors tipping in favor
of plea withdrawal, we hold "fair and just reason[s]" call for
the withdrawal of Walter's guilty plea.  In particular, Walter's

persistent assertion that he lacked penal responsibility and the lack of any Harter colloquy to ascertain the basis for Walter's request for new counsel are compelling "fair and just reason[s]" that warrant plea withdrawal.

In light of this holding, we need not determine whether the circuit court erred when it denied DPD Aquino's motion to withdraw as counsel. We reiterate, however, that "when an indigent defendant requests that appointed counsel be replaced, the trial court has a duty to conduct a penetrating and comprehensive examination of the defendant on the record, in order to ascertain the bases for the defendant's request." Harter, 134 Hawai'i at 323, 340 P.3d at 455 (internal quotation marks and citations omitted). Here, had a Harter colloquy taken place, the circuit court may have been made aware of the "fair and just reason[s]" that now warrant the withdrawal of Walter's guilty plea.

**B.  The Circuit Court Did Not Abuse its Discretion in Denying Walter's Motion to Disqualify**

We now turn to whether the ICA erred in ruling the circuit court did not abuse its discretion in denying Walter's motion to disqualify the presiding circuit court judge due to her limited social relationship with the State's witness, his former counsel, DPD Glendon. We conclude the ICA did not err.

Judges are disqualified when they "ha[ve] a personal bias or prejudice either against the party or in favor of any opposite party to the suit[.]"  HRS § 601-7(b) (2016).  Judges may also be disqualified if "circumstances . . . fairly give rise to an appearance of impropriety and . . . reasonably cast suspicion on [the judge's] impartiality."  State v. Brown, 70 Haw. 459, 467 n.3, 776 P.2d 1182, 1188 n.3 (1989) (emphases omitted)).  "[T]he test for disqualification due to the 'appearance of impropriety' is an objective one, based not on the beliefs of the petitioner or the judge, but on the assessment of a reasonable impartial onlooker apprised of all the facts."  Ross, 89 Hawai'i at 380, 974 P.2d at 20.

Walter contends that in planning a baby shower for a mutual friend more than six years prior to the instant proceedings, the relationship between the presiding judge and DPD Glendon is one where "[a]n impartial onlooker would have an impression of impropriety."  We disagree.  Reviewing the record "through [an] objective lens," it is unlikely "a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality could reasonably be questioned[.]"  Ross, 89 Hawai'i at 380, 974 P.2d at 20 (quoting United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992)).  We therefore hold that the circuit court did not abuse its discretion in denying the motion to disqualify.

28

### V.    CONCLUSION

For the foregoing reasons, we (1) vacate the ICA's June 21, 2024 Judgment on Appeal, (2) vacate the Circuit Court of the First Circuit's Judgment of Conviction and Sentence, entered on August 10, 2022, and (3) remand the case for further proceedings consistent with this opinion.

| | |
|---|---|
| Dwight C.H. Lum<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Sabrina S. McKenna |
| Stephen K. Tsushima<br>for respondent | /s/ Todd W. Eddins |
| | /s/ Lisa M. Ginoza |
| | /s/ Vladimir P. Devens |

